Stacey Ann MILLER, et al, Plaintiff,

v.

DILLARD'S, INC., Defendant.

No. 98–4079–SAC.

United States District Court,
D. Kansas.

Aug. 15, 2001.

Arthur A. Benson, II, Jamie K. Lansford, Aften P. McKinney, Arthur Bensen & Associates, Kansas City, MO, for Plaintiffs.

John J. Yates, Nilesh S. Patel, Bryan Cave LLP, Kansas City, MO, Lynn S. McCreary, Bryan Cave LLP, Overland Park, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This diversity jurisdiction case comes before the court on defendant Dillard's Inc.'s motion for summary judgment. The sole claim brought by the two plaintiffs, Stacey Ann Miller and Brently Ian Dorsey, is a state law tort claim for negligent supervision. Plaintiff's claim arises from their detention, inquiry and search as purported shoplifting suspects by a person plaintiffs believe was employed by Dillard's.

### SUMMARY JUDGMENT STANDARD

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether,

in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "There are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir. 1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The non-movant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; it requires " 'presenting sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir. 1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## UNCONTROVERTED FACTS

For purposes of this motion, the court considers the following facts, stated in the light most favorable to the plaintiffs, to be uncontroverted.

1. Defendant Dillard's operates a retail department store located in the Westridge Mall in Topeka, Kansas. Plaintiff Dorsey is an African American male employed as a firefighter by the City of Topeka. Plaintiff Miller is a Caucasian female employed as an occupational therapist assistant.

2. Sometime between April 16, 1996, and April 27, 1996, during the daylight hours, plaintiffs entered the Dillard's store in the Westridge Mall for the purpose of shopping.

3. Plaintiffs drove to the mall in Miller's vehicle and parked in the general mall parking lot, rather than in Dillard's parking lot. Miller's car could be seen from the entrance to Dillard's.

4. Plaintiffs browsed through the mall. While in Dillard's, plaintiffs purchased two shirts, but have no canceled checks, receipts, or other documents reflecting the date of their purchases from Dillard's.

5. Plaintiffs were not followed from department to department while in Dillard's, but felt they were being closely watched by an associate in the women's swim wear area. Plaintiff believes that an associate looked at her disapprovingly in the swim wear department, treated her rudely, and did not ask if she could assist them. Plaintiffs believe that they received substandard treatment while in Dillard's, and that such treatment was because they were an interracial couple.

6. Plaintiffs exited the mall through the Dillard's doors and walked diagonally across the parking lot to Miller's vehicle. When plaintiffs arrived at their car, they were confronted by an individual who identified himself as a law enforcement officer working security for Dillard's.[1] Plaintiffs neither saw the security guard inside Dillard's nor saw him walk out of Dillard's. The security guard was not wearing a uniform but was in plain clothes. Plaintiffs do not recall whether the security guard said he worked for the Topeka Police Department or the Kansas Highway Patrol.

7. After displaying what appeared to be a law enforcement badge, the security guard said they could not find the green and white swimsuit and asked Miller and

Dorsey what they had done with it. Plaintiffs tried to explain that the swimsuit had been returned to the rack in the store, but the security guard proceeded to put their belongings on the hood of the car and to search their purchases. The security guard then asked Miller to open her purse so that he could view its contents, and she complied. The security guard then asked Miller to lift her blouse so that he could see if she had forgotten to take off the green and white swimsuit. Miller complied, lifting her blouse to just below her brassiere for a few seconds.

8. Plaintiffs found the manner of the security guard to be very "gruff" and his words to be "very accusing." He offered no apology upon finding no stolen items. Plaintiff Dorsey believes that the incident in the parking lot occurred because plaintiffs were an interracial couple, as Miller had shopped at Dillard's before without incident when unaccompanied by Dorsey.

9. The encounter in the parking lot lasted approximately ten minutes. When it concluded, Miller saw the security guard walk into the Dillard's store. Plaintiffs admit that the man could have been just somebody in the parking lot. Neither plaintiff knows the identity of the security guard nor have they seen him since the encounter.

10. Dillard's hires off-duty law enforcement officers from the Topeka Police Department and the Kansas Highway Patrol to work as security guards.

11. Miller telephoned Dillard's the next day to complain, and asked to speak to the highest level employee who took complaints. Miller reported the incident to a female who stated that she did not believe

1. For convenience, the court will refer to this individual hereafter as the "security guard."

that the incident was handled improperly, and did not offer any apology. Miller made no attempt to contact Dillard's corporate office, and Dorsey never contacted Dillard's about the incident. Plaintiffs made no attempts to ascertain which, if any, law enforcement agency employed the security guard when he was not working for Dillard's.

12. Plaintiffs' descriptions of the guard are not specific. Plaintiff Miller states: "he was a white male, he was medium build, he was a little bit tall, he had on plain clothing." (Miller depo., p. 95). Plaintiff Dorsey described him as: "Not overweight. He wasn't skinny. He was average size. He wasn't tall, he wasn't short." (Dorsey depo., p. 127). "Just average build person ... no more than probably two-hundred pounds, I think maybe even that, if that." Dorsey depo., p. 128, Dorsey believes "average height" to be anywhere from 5'9" to 6'1"–6'2". *Id.*

13. Dillard's may or may not have required its security guards to wear uniforms on the date of the incident in the parking lot. At some unspecified point in time, Dillards established a new policy that its guards would wear uniforms instead of plain clothes.

14. No record of the incident appears in the April, 1996 Shift Incident Logs produced by Dillard's. Although detention and inquiry or search and arrest are to be documented on the Shift Incident Logs, at least one instance of shoplifting which allegedly occurred on April 6, 1996, was not noted in the April, 1996 Shift Incident Logs. The incident reports for April, 1996 cannot be found.

## ANALYSIS

■ Kansas law recognizes a claim against an employer for its negligent su-

pervision or retention of an employee who injures a non-employee third party. *See Beam v. Concord Hospitality, Inc.,* 873 F.Supp. 491, 503 (D.Kan.1994); *Kansas State Bank & Trust Co. v. Specialized Transp. Services, Inc.,* 249 Kan. 348, 362, 819 P.2d 587, 598 (1991). The tort of negligent supervision is separate and distinct from the torts of negligent hiring and negligent retention. *See Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499, 1519–20 (D.Kan.1993).

The sole issue addressed by the court in this motion is whether Dillard's owed a duty to the plaintiffs. This is a question of law, properly determined by way of summary judgment.

■ In a negligence case, plaintiff must establish a duty, breach of the duty, damages, and a causal connection between the duty breached and the damages. The existence of a duty is a question of law, while whether a duty has been breached is a question of fact. [Citation omitted.]

*McCleary v. Boss,* 24 Kan.App.2d 791, 792, 955 P.2d 127 (1997), *rev. denied* 264 Kan. 822 (1998).

### Master–Servant Relationship

Plaintiffs first attempt to establish a duty flowing from Dillard's by showing that the security guard was an employee of Dillard's. To prove this point, plaintiffs rely upon statements made and questions asked by the security guard. Defendant counters that the statement of the person to the effect that he was a security guard working for Dillard's is inadmissible hearsay.

■ Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence

to prove the truth of the matter asserted. Fed.R.Evid. 801(c). Hearsay is not admissible except as provided by the Federal Rules of Evidence or by other rule prescribed by the Supreme Court pursuant to statutory authority or by Acts of Congress. Fed.R.Evid. 802. Although the party opposing summary judgment "need not produce evidence in a form that would be admissible at trial, ... the content or substance of the evidence must be admissible." *Thomas,* 48 F.3d at 485 (citations omitted). "Evidence premised on inadmissible hearsay 'is not suitable grist for the summary judgment mill.'" *Walker v. Runyon,* 979 F.Supp. 1363, 1368 (D.Kan.1997) (quoting *Thomas,* 48 F.3d at 485). *See Aramburu v. The Boeing Co.,* 112 F.3d 1398, 1401 n. 1 (10th Cir.1997).

■ Plaintiffs rely upon the statements made by the security guard regarding his employment relationship with Dillard's to prove that he was, in fact, employed by Dillard's. Plaintiffs assert that the "hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements." *United States v. Freeman,* 816 F.2d 558, 563 (10th Cir.1987), *quoting Dutton v. Evans,* 400 U.S. 74, 88, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Plaintiffs have stated the law correctly, but the law does not except what was allegedly said to plaintiffs by the man in the parking lot from the hearsay rule. Plaintiffs are free to testify to what they have heard as long as they are not attempting to prove the truth of the facts stated through extrajudicial statements. The statement by the man in the parking lot that he was working security for Dillard's is intended to prove the truth of the matter asserted, and thus falls squarely within the hearsay rule.

Plaintiffs cite *United States v. Cole,* 124 F.3d 218, 1997 WL 583309 (10th Cir.1997) (Table), for the proposition that evidence that would otherwise be hearsay may be admitted because it provides structure and context and is essential to a full presentation and proof. The court has reviewed *Cole,* and cannot agree with plaintiffs that the case stands for the proposition they offer. *Cole* is a criminal case in which the court is discussing *res gestae* and evidence admissible for one of the purposes specified in Fed.R.Evid. 404(b). *Cole* contains no discussion whatsoever of hearsay, and the rules of law cited therein have no applicability to the proffered statements here.

■ Plaintiffs next contend that the security guard's questions to them should be admitted because questions are not included in the hearsay rule. The security guard asked a question regarding the location of the green and white swimsuit and what plaintiffs had done with it. Plaintiffs assert that courts have unanimously held that a question is not hearsay because a question cannot be a statement offered to prove the truth of the matter asserted, citing *United States v. Oguns,* 921 F.2d 442, 449 (2d Cir.1990) *quoting, Inc. Pub. Corp. v. Manhattan Magazine, Inc.,* 616 F.Supp. 370, 388 (S.D.N.Y.1985), *aff'd,* 788 F.2d 3 (2d Cir.1986) ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement.").

The Tenth Circuit has held that a question is not hearsay unless it is intended to be an assertion. In *United States v. Jackson,* 88 F.3d 845 (10th Cir.1996), a police officer called a telephone number displayed on a pager recovered from a stolen vehicle, and a person answered and asked, "Is this Kenny?" The court upheld the admission of the question as non-hearsay, stating:

In this case, the evidence was admissible because it was non-hearsay under Rule 801(a)(1) and (c). Rule 801(c) provides that " 'Hearsay' is a statement ... offered in evidence to prove the truth of the matter asserted." A "statement" is defined in Rule 801(a)(1) as "an oral or written assertion." Although "assertion" is not defined in Rule 801, the advisory committee notes state that "nothing is an assertion unless intended to be one." Fed.R.Evid. 801 advisory committee's note.

88 F.3d at 847. The court noted that rule 801 places the "burden upon the party claiming that the intention to make an assertion existed; ambiguous and doubtful cases will be resolved against him and in favor of admissibility. Fed.R.Evid. 801's advisory committee's note." *Id.*

Dillard's contends that the question about the location of the green and white swimsuit was intended to be an assertion of the truth of the matter asserted—*i.e.,* that the security guard knew particulars regarding a swimming suit allegedly tried on by Miller. (Dk.52, p. 19). Although that question could be interpreted as an assertion that the plaintiffs had taken the green and white swimsuit, the court views this as an ambiguous or doubtful case as to which Dillard's has not met its burden to show that the question was intended to be an assertion. The court will therefore presume the admissibility of the questions asked by the security guard.

However, the admission of these inquiries has little, if any probative value in showing the existence of an employment or other master-servant relationship between Dillard's and the security guard. Any person could have observed the plaintiffs in Dillard's and noticed their interest in a green and white swimsuit. Admission of the person's question lends support to the reasonable inference that this person had been in Dillard's, but is insufficient to raise a material question of fact regarding his employment relationship with Dillard's.

The court next addresses the security guard's act of showing the plaintiffs a badge. The definition of a "statement" for hearsay purposes expressly includes "nonverbal conduct intended as an assertion." Fed.R.Evid. 801(a), (c). The security guard's non-verbal act of showing the plaintiffs his badge was clearly the equivalent of words, assertive in nature, and to be regarded as a statement. Showing the badge was just another way of asserting that he was regularly employed as a law enforcement officer. His showing of the badge evidenced the truth of the fact he asserted verbally contemporaneously therewith, *i.e.,* that he was a law enforcement officer. As such, his act of showing a badge constitutes hearsay, and is inadmissible.[2]

Plaintiffs could, of course, testify that after the incident, they observed the man walk toward Dillard's, or into its entrance.

**2.** Plaintiffs do not contend that the security guard's statement is a non-hearsay admission by a party opponent. See Fed.R.Evid. 801(d)(2)(providing that a statement is not hearsay if it is offered against a party and is "(C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship ...") Plaintiffs perhaps recognize the futility of such an argument, given the following language of the same rule: "The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C) [or] the agency or employment relationship and scope thereof under subdivision (D) ..." *Id.*

This testimony, coupled with the question about the swimsuit, is insufficient, however, to warrant a reasonable person's belief that the security guard was in fact employed by Dillard's.

Absent the security guard's assertions, viewing the evidence of record and drawing all reasonable inferences in the light most favorable to the plaintiff, the court finds that a rational trier of fact would not be persuaded to find for plaintiff. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Thomas,* 48 F.3d at 484.

In the absence of such statements, no material question of fact has been raised that the man in the parking lot was an employee of Dillard's.

**Other Special Relationship**

 Plaintiffs additionally allege that no employee-employer relationship is necessary. Plaintiffs apparently recognize the general rule for negligence purposes that "an actor has no duty to control the conduct of a third person to prevent that person from causing harm to others unless a 'special relationship' exists between the actor and the third party or the actor and the injured party. Restatement (Second) of Torts § 315 (1963)." *McGee v. Chalfant,* 248 Kan. 434, 438, 806 P.2d 980 (1991). See *Beckner v. Jensen,* —— Kan. App. ——, 24 P.3d 169 (2001), quoting *Washington v. State,* 17 Kan.App.2d 518, 521, 839 P.2d 555, *rev. denied* 252 Kan. 1095 (1992).

 Plaintiffs assert that Dillard's has a "special relationship" with them, a third party, by virtue of the relationship between a business proprietor and its patrons. Negligent supervision claims can be based upon a defendant's failure to supervise or control persons with whom

the defendant has a special relationship, even if the person is not an employee of the defendant. *See Nero v. Kansas State University,* 253 Kan. 567, 861 P.2d 768 (1993); *C.J.W. v. State,* 253 Kan. 1, 853 P.2d 4 (1993).

Plaintiffs cite solely to "*Nero* at 779–80," (Dk.49, p. 31), which discusses premises liability cases which relied upon the Restatement (Second) of Torts § 344 (1964). That provision states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Neither the premises liability cases discussed in *Nero* nor the above Section of the Restatement applies here, as it is uncontested that the alleged injury did not occur in Dillard's store or even in its parking lot.

 "A special relationship may exist between parent and child, master and servant, the possessor of land and licensees, persons in charge of one with dangerous propensities, and persons with custody of another. *Restatement (Second) of Torts §§ 316–320 (1964).*" *McGee* 248 Kan. at 438, 806 P.2d 980. See also *Restatement (Second) of Torts § 315 (1964).* None of these is alleged to exist in the present case. Kansas cases additionally

recognize that a special relationship exists when one creates a foreseeable peril, not readily discoverable, and fails to warn. *Durflinger v. Artiles*, 234 Kan. 484, 499, 673 P.2d 86 (1983). No facts alleged here bring this case within that rule, however.

Plaintiffs have failed to prove that under Kansas law, a storekeeper and its customer enjoy the "special relationship" necessary to implicate a higher duty of care for purposes of a negligent supervision claim. Because plaintiffs cannot establish that there was any relationship whatsoever between the man in the parking lot and the defendant, as is necessary though not sufficient[3] for proof of a negligent supervision claim, the court hereby grants defendant's motion for summary judgment.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is granted.

---

**3.** The court does not discuss herein other elements necessary for a negligent retention claim. *See Kansas State Bank & Tr. Co.*, 249 Kan. at 362, 819 P.2d 587. ("When a third party asserts a negligent retention and supervision claim against an employer, liability results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor. The employer is subject to liability only for such harm as is within that risk.")