17 Kan. App. 2d 518 (1992)
839 P.2d 555
LEE WASHINGTON II, Appellant/Cross-Appellee,
v.
STATE OF KANSAS, Appellee/Cross-Appellant.
No. 67,194
Court of Appeals of Kansas.
Opinion filed October 16, 1992.
Petition for review denied December 23, 1992.
Dennis E. Mitchell, of Kansas City, for the appellant/cross appellee.
Lou Allen, special assistant attorney general, of Topeka, for the appellee/cross-appellant.
Before BRISCOE, C.J., BRAZIL, J., and KAREN M. HUMPHREYS, District Judge, assigned.
Petition for review denied 252 Kan. ___ (December 23, 1992).
*519 BRISCOE, C.J.:
Lee Washington II appeals and the State cross-appeals from the district court's order granting summary judgment in favor of the State in a negligence action filed pursuant to the Kansas Tort Claims Act, K.S.A. 75-6101 et seq. Washington is an inmate in Lansing Correctional Facility (formerly Kansas State Penitentiary). In this action, Washington seeks damages for personal injuries he sustained as a result of an attack upon him by another inmate, Timothy Vaughn. The district court concluded the discretionary function exception, K.S.A. 1991 Supp. 75-6104(e), applied to this case and granted the State's motion for summary judgment.
Washington was in custody at Lansing when he observed Vaughn forcefully trying to sodomize another inmate. Washington attempted to intervene on the victim's behalf. As a result, he was attacked by Vaughn and a fight ensued. Correctional officers were summoned and both Washington and Vaughn were placed in the Adjustment and Treatment Unit (A&T) of the prison.
Approximately three weeks before Washington's release from A&T, Vaughn told Washington, "I'm going to get you." This threat was made while Vaughn was being escorted past Washington's cell. The next day, Vaughn made another statement to Washington to the effect that "it was just a matter of time." Vaughn also glared at Washington when he was escorted past Washington's cell. The officers escorting Vaughn allegedly witnessed all of this conduct. Washington verbally complained to an officer in A&T about these alleged statements and stated he feared another altercation would occur while he and Vaughn were in A&T.
A disciplinary hearing for each inmate was held on the same day before different hearing panels. Washington was found not guilty and was released from A&T the same morning as his hearing and returned to the general prison population. He was assigned to Upper B Cellhouse, Cell #534. Vaughn was found guilty and sentenced to 45 days in disciplinary segregation, but was given credit for the time he had already served in A&T and released from A&T to the general prison population. He was assigned to Upper B Cellhouse, Cell #542. Vaughn's cell was four cells away from Washington's.
*520 Washington did not request protective custody upon being released from A&T because he did not anticipate being placed in the same cellhouse as Vaughn. It was Washington's understanding that inmates were separated after a fight and not housed in "close proximity." In this instance, prison officials had space available to assign the two inmates to different cellhouses.
On the same day as their release from A&T, while on their way to dinner, Vaughn stabbed Washington in the left eye with an ice pick. Although Washington underwent surgery for his injury at the Kansas University Medical Center, he suffered extensive, irreparable damage to his eye.
In this action, Washington alleged the prison officials knew of the likelihood of Vaughn's retaliation against Washington and acted negligently in assigning Washington and Vaughn to the same cellhouse without warning Washington or making some provision to protect Washington from Vaughn. The State filed a motion for summary judgment, arguing: (1) The prison officials did not breach any duty owed to Washington; (2) Washington's injuries were not proximately caused by the prison officials' acts or omissions; (3) the police function exception (K.S.A. 1991 Supp. 75-6104[n]) of the Kansas Tort Claims Act precluded Washington's recovery; and (4) the discretionary function exception (K.S.A. 1991 Supp. 75-6104[e]) of the Act also precluded Washington's recovery. The district court concluded the State did owe a duty to Washington to protect him from Vaughn, but held the State was not liable to Washington by virtue of the discretionary function exception.
The State cross-appeals from the court's finding regarding the duty of care owed by the State to Washington. The State contends the duty set forth in K.S.A. 1991 Supp. 75-5210(a) requiring the State to treat inmates humanely was improperly expanded by the court by applying Restatement (Second) of Torts § 320 (1977) to create a special relationship between the State and Washington and a duty flowing from that relationship to exercise reasonable care to control Vaughn's conduct to prevent him from harming Washington.
Subject to the limitations of the Act, the State, a governmental entity as defined by K.S.A. 1991 Supp. 75-6102(c), is liable for damages resulting from the negligent acts or omissions of its *521 employees while acting within the scope of their employment under circumstances where a private person would also be liable under Kansas law. K.S.A. 75-6103(a). To recover for negligence, a plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Dietz v. Atchison, Topeka & Santa Fe Rwy. Co., 16 Kan. App.2d 342, 345, 823 P.2d 810 (1991). "Whether a duty exists is a question of law." Durflinger v. Artiles, 234 Kan. 484, 488, 673 P.2d 86 (1983). This court's review of the district court's conclusions of law is unlimited. Gillespie v. Seymour, 250 Kan. 123, 129, 823 P.2d 782 (1991).
I. Duty Owed.
What duty did the State owe Washington? Did the State have a duty under Restatement (Second) of Torts §§ 315-320 (1977) to exercise reasonable care to control Vaughn and prevent him from harming Washington because of its special relationship with Washington or merely a duty to treat Washington humanely as required by K.S.A. 75-5210(a)? The question presented is one of first impression in this state.
As a general rule, in the absence of a "special relationship" there is no duty on an actor to control the conduct of a third person to prevent harm to others. McGee v. Chalfant, 248 Kan. 434, 438, 806 P.2d 980 (1991); Restatement (Second) of Torts § 315 (1977). A special relationship may exist between parent and child, master and servant, the possessor of land and licensees, persons in charge of one with dangerous propensities, and persons with custody of another. Restatement (Second) of Torts §§ 316-320.
Washington relies upon Restatement (Second) of Torts to argue the State had a special relationship with both Washington and Vaughn which created a duty on behalf of the State to control Vaughn and protect Washington. Restatement (Second) of Torts § 315 states:
"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection."
*522 § 319 states:
"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."
§ 320 states:
"One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor
(a) knows or has reason to know that he has the ability to control the conduct of the third person, and
(b) knows or should know of the necessity and opportunity for exercising such control."
Washington also relies upon Cansler v. State, 234 Kan. 554, 675 P.2d 57 (1984), where the rule set forth in Restatement (Second) of Torts § 319 (1977) was adopted as the law of this state governing the duty owed to area residents and area law enforcement personnel by those in charge of persons with dangerous propensities. In that case, one of seven armed inmates who escaped from the penitentiary shot and severely wounded a police officer. The officer filed a personal injury action against the State. In an interlocutory appeal brought by the officer, the Supreme Court was asked to determine whether the State and Leavenworth County owed a duty to him and, if so, whether the acts or omissions of the defendants fell within the exceptions contained in K.S.A. 1981 Supp. 75-6104 (c), (d), or (m) (now 1991 Supp. 75-6104 [c], [e], and [n]).
The court in Cansler adopted the rule set forth in Restatement (Second) of Torts § 319: "It is the rule in this state that one who takes charge of a third person, whom he knows or should know to be likely to cause bodily harm to others if not controlled, is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." 234 Kan. 554, Syl. ¶ 1. Applying this rule to the facts presented, the court concluded the State had the duty to securely confine the seven *523 inmates, as well as a duty to warn area residents and law enforcement officials when they escaped. In reaching that conclusion, the court noted the duty of the State to exercise reasonable care is commensurate with the risk presented. The potential for immediate harm, personal injury, or death to nearby residents or law enforcement personnel was greatly increased by the escape of seven heavily armed inmates who were all serving life terms for murder.
The State argues the duty established in Cansler applies only to the extent a prisoner is a threat to the surrounding community and law enforcement authorities and does not involve the threat of harm by one prisoner to another. By definition, penitentiaries house prisoners with dangerous propensities. The State argues that, if the duty defined in Cansler were applied to one prisoner's attack upon another, the State, by operation of a penitentiary, would become the insurer of all injuries inflicted by one prisoner upon another.
In resolving the question of what duty is owed Washington, we conclude the duty defined in Restatement (Second) of Torts § 320, quoted above, most closely reflects the relationship of the parties and should be applied to the penitentiary setting to define the duty owed by the State to control a prisoner and prevent harm to another prisoner. In the absence of a statute, nearly all courts that have considered the matter have concluded that prison officials owe a duty of ordinary or reasonable care to safeguard a prisoner in their custody or control from attack by other prisoners. This duty to provide reasonable care to protect an inmate from violence is not violated in the absence of a determination that the danger was known or, in the exercise of ordinary care, should have been known by a prison official. See Matthews v. District of Columbia, 387 A.2d 731, 734 (D.C. 1978); Dept. of Health & Rehab. Serv. v. Whaley, 531 So.2d 723, 729 (Fla. Dist. App. 1988); Merritt for Merritt v. State, 108 Idaho 20, 24, 696 P.2d 871 (1985); Methola v. County of Eddy, 96 N.M. 274, 277, 629 P.2d 350 (Ct. App. 1981); Hann v. State, 137 Misc.2d 605, 606, 521 N.Y.S.2d 973 (1987); Keeland v. Yamhill County, 24 Or. App. 85, 89-90, 545 P.2d 137 (1976); Saunders v. State, 446 A.2d 748, 750 (R.I. 1982); Annot., 41 A.L.R.3d 1021, 1028-29. By application of the duty defined in Restatement (Second) *524 of Torts § 320, the State does not become the insurer of the safety of a prisoner. The State only becomes liable in the event that damage proximately results from a failure to exercise reasonable care to prevent harm. Again, this duty to provide reasonable care to protect an inmate from violence is not violated in the absence of a determination that the danger was known or, in the exercise of ordinary care, should have been known by a prison official.
Whether a duty has been breached is a question of fact. Durflinger, 234 Kan. at 488. Application of the duty set forth in Restatement (Second) of Torts § 320 and the aforementioned cases suggests that, because Washington was in the custody of prison officials when threatened by Vaughn and officials allegedly knew of that threat and had knowledge of Washington's fight with Vaughn, those officials had a duty to exercise reasonable care to control Vaughn and prevent him from harming Washington. Whether the State breached its duty to Washington is a question of fact which should be submitted to a trier of fact.
II. Discretionary Function Exception.
Washington also contends the district court erroneously concluded the State was exempt from liability under K.S.A. 1991 Supp. 75-6104, which provides:
"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:
....
(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved."
This court's review of the district court's conclusions of law is unlimited. Gillespie, 250 Kan. at 129. "The burden is on the governmental entity to establish immunity under one of the exceptions in K.S.A. 75-6104." Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc., 249 Kan. 348, 364, 819 P.2d 587 (1991). The most recent Kansas cases dealing with the discretionary function exception hold that it is not applicable in situations where a legal duty exists, either by case law or by statute, which the governmental agency is required to follow. 249 *525 Kan. at 366; Dougan v. Rossville Drainage Dist., 243 Kan. 315, 322, 757 P.2d 272 (1988).
In its journal entry granting summary judgment, the district court concluded that Kansas statutes provide no standards or guidelines for handling prisoners. The court concluded, in the absence of such standards or guidelines, the State was exempt from liability under the discretionary function exception. Assuming the prison authorities in charge of Vaughn knew or should have known of his intention to harm Washington, they had a duty to exercise reasonable care to control Vaughn to prevent the occurrence of such harm. If the factfinder concludes upon remand that the State's legal duty under Restatement (Second) of Torts § 320 was breached, the State cannot claim immunity from liability under the provisions of 75-6104(e) by asserting the absence of standards or guidelines applicable to the handling of prisoners.
III. Police Protection Exception.
In its journal entry granting summary judgment, the court did not address whether the State was exempt from liability pursuant to K.S.A. 1991 Supp. 75-6104(n). The State raised the statute's applicability both in its motion for summary judgment and on appeal. Because this court could conclude the statute exempts the State from liability, the applicability of the provision is addressed here. See Collins v. Heavener Properties, Inc., 245 Kan. 623, 633, 783 P.2d 883 (1989).
K.S.A. 1991 Supp. 75-6104 provides:
"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:
....
(n) failure to provide, or the method of providing, police or fire protection."
The State argues the administration of a correctional facility is a police function exempt from liability pursuant to this provision. As a general rule, this is correct. In Cansler, 234 Kan. at 571, the court concluded that "[t]he operation of a penal institution is carried on pursuant to the police power of the state."
Although the language of 75-6104(n) suggests immunity for failure to provide adequate police protection is absolute, the police protection exemption will not provide governmental immunity in *526 all instances where the State fails to provide adequate protection. Where a government employee (1) possesses the power of a law enforcement officer and (2) breaches a specific duty owed to an individual rather than the public at large, 75-6104(n) will not protect the State from liability. Robertson v. City of Topeka, 231 Kan. 358, 363, 644 P.2d 458 (1982). If upon remand it is concluded that prison officials breached a specific duty owed to Washington as an individual pursuant to Restatement (Second) of Torts § 320, the police protection exemption would not provide the State with immunity from liability.
The district court's rulings on the issues raised in both the appeal and the cross-appeal are reversed and remanded. Although the district court correctly concluded the duty set forth in Restatement (Second) of Torts § 320 applies, there remain material facts in dispute regarding whether that duty was breached.
Reversed and remanded for further proceedings.