IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,610

RON KEISWETTER, Administrator of the Estate of Helen Keiswetter, Deceased;
and RON KEISWETTER, Individually and on Behalf of the Heirs-at-law of
Helen Keiswetter, Deceased,
*Appellants*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.

2.

The Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, provides that a governmental entity can be found liable for the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment only if (1) a private person could be liable under the same circumstances and (2) no statutory exception to liability applies.

3.

The governmental entity bears the burden to establish immunity under the exceptions of the Kansas Tort Claims Act.

4.

Under the facts of this case, the State is immune from liability under the police protection exception of the Kansas Tort Claims Act, K.S.A. 2015 Supp. 75-6104(n).

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 25, 2014. Appeal from Norton District Court; GLENN D. SCHIFFNER, judge. Opinion filed April 22, 2016. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Dustin L. Van Dyk*, of Palmer, Leatherman, White & Girard, LLP, of Topeka, argued the cause, and *L.J. Leatherman*, of the same firm, was with him on the briefs for appellants.

*John Wesley Smith*, assistant attorney general, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

NUSS, C.J.:  This is an action for personal injury and wrongful death brought against the State by Ron Keiswetter, individually and on behalf of the estate and heirs-at-law of his mother Helen Keiswetter. She died from her injuries after a minimum-security inmate escaped from the State's custody, entered her home, and ultimately forced her into a closet.

The Norton County District Court granted summary judgment to the State on a number of grounds, and a panel of the Court of Appeals affirmed. We affirm the summary judgment because the State is immune from liability under the police protection exception of the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.* (KTCA).

FACTS AND PROCEDURAL HISTORY

Christopher Zorn was part of a Norton Correctional Facility community work crew mowing grass at a Norton church when he escaped from custody. About 25 minutes before the crew supervisor discovered Zorn was missing, an investigator from the prison arrived to question the inmates about a pack of cigarettes that had been stolen from another site where the crew had recently worked. Zorn ran from the church before he could be interviewed. The proper authorities were notified, and a large-scale search ensued.

Zorn later admitted he had hidden in a shed until about 9 that night. He then entered Helen Keiswetter's house to find keys for stealing her car. He said that he injured her when he shoved her into a closet. More specifically, he admitted he had grabbed her by the arms and waist and that he had kicked her, causing her to fall and hit her head.

Helen Keiswetter's daughter and grandson found her barricaded in the closet the next morning. She was transported first to the local hospital and then to Wesley Medical Center in Wichita. She died 8 months later.

Her son, Ron Keiswetter, then sued the State for her personal injuries and wrongful death. He claimed it was negligent by "(a) failing to continue Mr. Zorn's medication to control his bipolar disorder; (b) putting Mr. Zorn . . . on work release out in the community in spite of his dangerous propensities; (c) negligently conducting a criminal investigation of Mr. Zorn while he was on work release in the community instead of while he was in the security of the Norton Correctional Facility; and (d) failing to take reasonable care in preventing Mr. Zorn, who was in [the Kansas Department of Corrections'] custody and control, from escaping and causing harm to Ms. Keiswetter." He later voluntarily dismissed all but the fourth claim.

The State filed a motion for summary judgment, arguing it owed no duty to Helen Keiswetter to protect her from Zorn's attack, and, even if it did, it was immune from liability under two exceptions of the KTCA. After a hearing the district court granted summary judgment. It found that the public duty doctrine precluded Keiswetter's claim because any duty owed his mother was owed to the public at large and not specifically to her. The court additionally found that no special duty was owed to Keiswetter and that the State was immune from liability under the police protection exception of the KTCA, K.S.A. 2015 Supp. 75-6104(n).

A panel of the Court of Appeals affirmed. Like the district court, the panel concluded Keiswetter's claim failed because of the public duty doctrine, the lack of a special duty owed to Keiswetter, and the police protection exception of the KTCA. Additionally, the panel held Keiswetter had presented insufficient evidence of the State's negligence to survive summary judgment. *Keiswetter v. State*, No. 110,610, 2014 WL 3732021 (Kan. App. 2014) (unpublished opinion).

Keiswetter filed a petition for review with this court under K.S.A. 20-3018, challenging each of the panel's holdings and particularly asking us to consider whether the public duty doctrine is still viable under Kansas law. We granted the petition, obtaining jurisdiction under K.S.A. 60-2101(b).

ANALYSIS

Issue: *The State is entitled to summary judgment as a matter of law because it is immune from liability under the KTCA's police protection exception.*

The parties' arguments primarily concern whether we should abolish the public duty doctrine. Under that doctrine, a plaintiff suing a governmental entity in negligence cannot establish the duty requirement of its claim when the duty is a public one, *i.e.*, owed to the public at large and not to any particular individual. See *Shirley v. Glass*, 297

4

Kan. 888, 894, 308 P.3d 1 (2013) (negligence claim requires a duty owed to the plaintiff by the defendant, breach of that duty, causation between the breach and the injury, and damages suffered by plaintiff). In short, the doctrine bars a governmental entity's liability unless the plaintiff can show a special relationship that gives rise to a specific duty owed to him or her. See *Roe v. Dept. of SRS*, 278 Kan. 584, 593, 102 P.3d 396 (2004); *Robertson v. City of Topeka*, 231 Kan. 358, 363, 644 P.2d 458 (1982).

Despite the parties' focus on this doctrine, however, the ultimate issue before us is whether the district court properly granted summary judgment to the State. As discussed below, we conclude such judgment was proper because the State is entitled to immunity under the KTCA's police protection exception. See K.S.A. 2015 Supp. 75-6104(n). So we need not also address the other grounds the lower courts found to reject Keiswetter's claim.

*Standard of review*

Our summary judgment standard is well-known:

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted]. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009)'" *Fawcett v. Oil Producers, Inc. of Kansas*, 302 Kan. 350, 358-59, 352 P.3d 1032 (2015).

When the material facts are uncontroverted, we exercise unlimited review over a district court's grant of summary judgment. See *Soto v. City of Bonner Springs*, 291 Kan. 73, 78, 238 P.3d 278 (2010). And whether an exception of the KTCA applies to grant immunity to a governmental entity is a question of law, also subject to unlimited review. See 291 Kan. at 78.

*Discussion*

Liability is the rule, and immunity is the exception for governmental entities sued under the KTCA. See 291 Kan. at 78. The general rule of liability is established by K.S.A. 2015 Supp. 75-6103(a) which provides:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

K.S.A. 2015 Supp. 75-6104 lists several exceptions to liability, including the police protection exception. Under this exception, "[a] governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from . . . failure to provide, or the method of providing, police or fire protection[.]" K.S.A. 2015 Supp. 75-6104(n). Such exceptions to governmental liability, like the general allowance of liability itself, are matters of public policy left to the legislature. See *Barrett v. U. S. D. No. 259*, 272 Kan. 250, 260, 32 P.3d 1156 (2001).

In interpreting the KTCA, K.S.A. 2003 Supp. 75-6101 *et seq.* we have held:

"'[T]he analytical matrix established by the legislature in enacting the KTCA dictates that a governmental entity can be found liable for the negligent or wrongful act or omission of

6

any of its employees while acting within the scope of their employment only if (1) a private person could be liable under the same circumstances and (2) *no statutory exception to liability applies*.'" (Emphasis added.) *Soto*, 291 Kan. at 78 (quoting *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 585, 214 P.3d 1173 [2009]).

As in *Soto*, for the sake of a straightforward review we will assume, but not decide, that a duty—here, to Keiswetter—existed. See 291 Kan. at 78; *cf. Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 623, 938 P.2d 1293 (1997) (decision to grant summary judgment on basis of immunity is not an acknowledgment "any duty existed on the part of defendants to protect [victim] from [escaped juvenile's] criminal actions"). So we need only determine whether the State's claimed statutory exception to liability, *i.e.*, the police protection exception, applies. If the exception applies, it disposes of this case.

Moreover, because an exception to liability, *i.e.*, an immunity, is supposed to free the defendant from the burdens of litigation, it typically makes sense to examine immunity as the threshold question. As we have stated about the related issue of qualified immunity:

> "'"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' [Citation omitted.] The privilege is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' [Citation omitted.] As a result, '*we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation*.' [Citation omitted.]"'" *State v. Jones*, 298 Kan. 324, 332, 311 P.3d 1125 (2013).

Consistent with this view, this court has supported a district court's refusal to allow depositions and affirmed its dismissal of a negligence action against a defendant because of the plaintiff's failure to state a claim upon which relief could be granted. This failure was due, among other things, to the defendant's immunity from liability provided by the police protection exception in the KTCA. *Beck v. Kansas Adult Authority*, 241

7

Kan. 13, 23-24, 735 P.2d 222 (1987). Accord *Robertson*, 231 Kan. at 362-63 (affirming dismissal of negligence action for failure to state a claim based upon discretionary function exception in KTCA).

The *Beck* court generally explained the advantages of addressing dispositive issues early, *i.e.*, by a motion to dismiss instead of a motion for summary judgment—even though both can avoid the burdens of trial:

> "The important distinction between the handling of a motion to dismiss on the one hand and a motion for summary judgment on the other is that in the former the trial court is limited to a review of the pleadings, while in the latter, *the trial court takes into consideration all of the facts disclosed during the discovery process*—affidavits, depositions, admissions, and answers to interrogatories. Thus, a party opposing a motion for summary judgment may point to or provide depositions, affidavits, or other documents to demonstrate that there are genuine issues of material fact, necessitating a trial." (Emphasis added.) 241 Kan. at 26.

Given our assumption that a duty to Keiswetter exists, our immunity analysis proceeds by acknowledging that the State has the burden to establish it is immune from liability under the police protection exception. See *Soto*, 291 Kan. at 78. If the State cannot meet this burden, then the general rule of liability set forth in K.S.A. 2015 Supp. 75-6103(a) applies. *Jarboe*, 262 Kan. at 624.

The Court of Appeals panel in the instant case relied upon *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), to hold the State was entitled to immunity under the police protection exception. There, the plaintiff claimed the State was negligent in (1) failing to confine seven armed and dangerous inmates who escaped from a correctional facility and (2) failing to warn the public and local law enforcement of the escape. The *Cansler* court determined the failure to warn did not constitute a failure to provide police protection, and, therefore, the State was not immune from liability under the police protection

exception. 234 Kan. at 572. But, as the *Keiswetter* panel noted, *Cansler* suggests that without the duty-to-warn claim, the State would have been immune from liability under that exception. See *Keiswetter*, 2014 WL 3732021, at \*6 ("Absent the failure to warn of the escape after it occurred, *Cansler* indicates that the State would have been immune.").

In discussing the State's duty to confine the dangerous inmates before their escape, the *Cansler* court acknowledged that "police protection" was implicated:

> "There is no question that penal officials and employees have the powers of law enforcement officers when such powers are necessary for the performance of their duties. When moving prisoners from one penal institution to another, or to and from court, penal officers would have and exercise the same powers as would, for example, a deputy sheriff. *The operation of a penal institution is carried on pursuant to the police power of the state, and the institution itself provides police protection for all Kansas residents* by keeping apart from the rest of the population those convicted felony offenders whose actions have been and perhaps promise to be dangerous and inimical to society. . . .

> ". . . While the seven inmates were within the walls of the penitentiary, the State's duty could be classified as custodial and as *providing police protection for the benefit of all Kansans*." (Emphasis added.) 234 Kan. at 571-72.

See also K.S.A. 2015 Supp. 22-2202(m) (defining "law enforcement officer" as a person who has a "duty to maintain or assert custody or supervision over persons accused or convicted of crime"); K.S.A. 75-5247a (prison officials "acting within the scope of their duties as employees of the department of corrections, shall possess such powers and duties of a law enforcement officer as are necessary for the performance of such duties"). So we conclude per these statements from *Cansler* that under certain circumstances, the KTCA's police protection exception can apply to correctional facilities and their supervisory personnel.

Generally, whether an exception under K.S.A. 2015 Supp. 75-6104 applies depends on the specific allegations raised by the plaintiff. See *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 235, 262 P.3d 336 (2011) (discretionary function exception under K.S.A. 2010 Supp. 75-6104[e] does not apply when plaintiff alleges government defendant negligently performed a ministerial act); *Cansler*, 234 Kan. at 568 (enforcement of a law exception under K.S.A. 1981 Supp. 75-6104[c] applies when plaintiff's sole claim is that government defendant enforced or failed to enforce a law). And exceptions are not to be liberally construed. See *Jackson v. City of Kansas City*, 235 Kan. 278, 286, 680 P.2d 877 (1984) (ordinarily a strict or narrow interpretation must be applied to statutory exceptions), *overruled on other grounds by Simmons v. Porter*, 298 Kan. 299, 312 P.3d 345 (2013); see also *Robertson*, 231 Kan. at 363 (ordinarily a strict or narrow interpretation is applied to statutory exceptions, but statutes must be construed in their entirety with a view of giving effect to the legislative intent).

Here, Keiswetter claims only that the State failed to take reasonable care in preventing Zorn from escaping from custody and attacking Helen Keiswetter, *i.e.*, that the State breached an individual duty to her to confine Zorn. Relying on *Cansler*, the State responds that because the duty to keep an inmate confined is a duty of "providing police protection for the benefit of all Kansans," any breach of that duty is immunized by the police protection exception. See *Cansler*, 234 Kan. at 572. Keiswetter counters with a 1992 opinion of a Court of Appeals panel to contend that the police protection exception does not apply when a government defendant breaches a specific duty owed to an individual rather than the public at large. See *Washington v. State*, 17 Kan. App. 2d 518, 525-26, 839 P.2d 555 (1992). As discussed below, we agree with the State and conclude the police protection exception exempts the State from liability in this case.

We start with *Washington.* Inmate Washington of the Lansing Correctional Facility had been in a fight with an inmate named Vaughn. Both were later placed in the Adjustment and Treatment Unit where, while separated, Vaughn repeatedly threatened

10

Washington. Both were released from the unit and placed in general population the same day in cells four cells apart. Vaughn then attacked and injured Washington who sued to recover for his injuries.

The *Washington* Court of Appeals panel rejected the argument that the State was immunized because of the police protection exception with the following discussion:

> "The State argues the administration of a correctional facility is a police function exempt from liability pursuant to this provision. As a general rule, this is correct. In *Cansler,* 234 Kan. at 571, the court concluded that '[t]he operation of a penal institution is carried on pursuant to the police power of the state.'
>
> "Although the language of 75-6104(n) suggests immunity for failure to provide adequate police protection is absolute, the police protection exemption will not provide governmental immunity in all instances where the State fails to provide adequate protection. Where a government employee (1) possesses the power of a law enforcement officer and (2) *breaches a specific duty owed to an individual rather than the public at large, 75-6104(n) will not protect the State from liability. Robertson v. City of Topeka, 231 Kan. 358, 363, 644 P.2d 458 (1982).* If upon remand it is concluded that prison officials breached a specific duty owed to Washington as an individual pursuant to Restatement (Second) of Torts § 320, the police protection exemption would not provide the State with immunity from liability." (Emphasis added.) 17 Kan. App. 2d at 525-26.

We reject *Washington*'s blanket statement that the police protection exception never applies to a breach of "a specific duty owed to an individual rather than the public at large"—a rejection which eliminates our need to determine whether special duties existed here. 17 Kan. App. 2d at 526. In support of our conclusion we first observe that the sole authority cited by the *Washington* panel for this particular statement is *Robertson v. City of Topeka.* But this court's decision in *Robertson* is not supportive. We simply noted that "[a]bsent some special relationship with or specific duty owed an individual, liability will not lie for damages"—a statement with which we agree. 231 Kan. at 363. The *Washington* panel goes farther, however, to conclude there can never be immunity

11

under the police protection exception when law enforcement breaches this special duty. Second, we note this view by the *Washington* panel contravenes *Cansler*'s indication 8 years earlier that the police protection exception would have applied absent the duty to warn. And it is important to recognize that the *Cansler* plaintiff and Keiswetter both claimed, among other things, the State breached a special duty to confine those respective inmates under Restatement (Second) of Torts § 319 (1964).

We turn now to Keiswetter's implicit contention during oral arguments that rejecting this *Washington* panel conclusion would violate the general rule that exceptions to liability under the KTCA must be narrowly construed. See *Robertson*, 231 Kan. at 363. We acknowledge this court previously rejected an overbroad construction of the police protection exception in *Jackson v. City of Kansas City*, 235 Kan. 278. The *Jackson* decision was a personal injury action under the KTCA involving a collision between two Kansas City fire trucks responding to the same fire.

The City argued the police protection exception granted "absolute" immunity in any suit under the KTCA where the plaintiff alleged a governmental entity failed to provide or negligently provided fire protection through its methods. Specifically, "[T]he City asserts that under subsection (m) [now subsection (n)] the sole fact the incident herein occurred while two city fire trucks were responding to a fire alarm operates as a complete bar to claimants' actions." 235 Kan. at 290. In holding the exception should not be construed quite so broadly, the *Jackson* court stated:

"We believe [the police protection exception] is aimed at *such basic matters as the type and number of fire trucks and police cars considered necessary for the operation of the respective departments; how many personnel might be required; how many and where police patrol cars are to operate*; the placement and supply of fire hydrants; and the selection of equipment options. *Accordingly, a city is immunized from such claims as a burglary could have been prevented if additional police cars had been on patrol, or a house could have been saved if more or better fire equipment had been purchased*. We do

12

not believe subsection (m) is so broad as to immunize a city on every aspect of negligent police and fire department operations. Should firemen negligently go to the wrong house and chop a hole in the roof thereof, we do not believe the city has immunity therefor on the basis the negligent act was a part of the method of fire protection." (Emphasis added.) 235 Kan. at 292.

Three years later we approvingly quoted this full *Jackson* language as we again examined the police protection exception in *Beck*, 241 Kan. 13. There, after a man entered the University of Kansas Medical Center's emergency department and killed two people with a shotgun, the plaintiffs brought personal injury and wrongful death actions against the Kansas Adult Authority, Board of Regents, and Medical Center. Following our confirmation that the university police officers had the same rights, protections, and immunities afforded to other law enforcement officers, we determined that "[T]he negligent acts complained of consist only of *the failure to provide more adequate police protection*, and the failure to warn." (Emphasis added.) 241 Kan. at 22. We relied on the plain language of the police protection exception and *Jackson*'s rationale to hold that "[t]he determination of *how to provide* police protection is immunized. The Medical Center is not liable *because of the methods* it adopted for police protection." (Emphasis added.) 241 Kan. at 24.

We conclude Keiswetter's claim that the State failed to take reasonable care in preventing Zorn from escaping from custody and attacking Helen Keiswetter falls under the police protection exception to liability under the KTCA because it invokes the State's "failure to provide, or the method of providing, police . . . protection." See K.S.A. 2015 Supp. 75-6104(n). As mentioned, this court has held: "[A] city is immunized from such claims as a burglary could have been prevented *if additional police cars* had been on patrol, or a house could have been saved *if more or better fire equipment* had been purchased" and a university medical center is immunized "because of the methods it adopted for police protection." (Emphasis added.) See *Jackson*, 235 Kan. at 292; *Beck,* 241 Kan. at 24; see also *Cansler*, 234 Kan. at 571-72. So the State likewise is immunized

13

from Keiswetter's claim that the attack on his mother could have been prevented if corrections personnel had more closely supervised Zorn, *e.g.*, with additional personnel, to prevent his escape. As we have stated previously: "'[T]he legislature is better equipped to resolve the difficult policy questions inherent in the field of governmental immunity. As judges our desire to achieve what may seem fair to us as individuals cannot overcome the laws enacted by our duly elected legislators.'" *Barrett*, 272 Kan. at 260 (quoting *Brown v. Wichita State University*, 219 Kan. 2, 9, 547 P.2d 1015 [1976]).

Because the State has demonstrated it is entitled to immunity under the KTCA's police protection exception, we do not consider the lower courts' additional grounds for rejecting Keiswetter's claim for relief, *i.e.*, the public duty doctrine, the lack of a special duty owed to Helen Keiswetter, or the failure to present sufficient evidence of negligence to survive summary judgment. See *Barrett*, 272 Kan. at 264 (after holding KTCA's recreational use exception provided immunity, no need to consider KTCA's discretionary function exception); *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 98, 785 P.2d 986 (1990) (after holding KTCA's recreational use exception provided immunity, no need to discuss discretionary function exception or Land and Water Recreational Areas Act defenses); *Beck*, 241 Kan. at 24 (after holding KTCA's police protection exception provided immunity, no need to reach the discretionary function exception).

The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.

14