IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,585

STATE OF KANSAS,
*Appellee*,

v.

NICHOLAS CORBIN,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court reviews a district court's ruling on a motion to determine if a defendant is a person with intellectual disability for abuse of discretion.

2.

Judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.

3.

K.S.A. 2015 Supp. 21-6622 precludes a district court from imposing a sentence of death, life without possibility of parole, or mandatory term of imprisonment for premeditated first-degree murder upon a defendant determined to be a person with intellectual disability.

1

4.

To make the required determination of intellectual disability, a district court must apply that phrase's statutory meaning as provided by K.S.A. 2015 Supp. 21-6622 and the 2016 amendments to K.S.A. 76-12b01.

5.

The 2016 legislature amended K.S.A. 76-12b01(i) to allow defendants to establish subaverage general intellectual functioning by means in addition to standardized intellectual testing.

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed December 23, 2016. Reversed and remanded with directions.

*Joanna Labastida* and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, were on the briefs for appellant.

*Ellen Hurst Mitchell*, county attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

NUSS, C.J.:  Nicholas Corbin pled no contest to the premeditated first-degree murder of his 3-month-old son. Before sentencing, he filed a motion pursuant to K.S.A. 2015 Supp. 21-6622(b) requesting that the district court determine if he was a person with "intellectual disability." The court denied the motion and sentenced Corbin to a hard 25 life sentence. After sentencing but during this appeal, the legislature amended the statute that supplies part of the definition of intellectual disability in K.S.A. 2015 Supp. 21-6622(b).

Because we conclude those amendments require consideration by the district court in its intellectual disability calculus, we reverse and remand with instructions.

FACTS AND PROCEDURAL HISTORY

The facts are undisputed. Nicholas Corbin and his girlfriend, Desirah Overturf, decided to stop feeding their infant son when he turned 2 months old. In addition to starving the baby, Corbin (1) held him upside down by his feet in a stream of water to bathe him and (2) burned his stomach with a hot baby bottle. When the couple did feed their son, Corbin held the baby's arms behind his back.

One night Overturf noticed her son was no longer breathing and she believed him dead. Corbin put the baby in a bowl of warm water because he had become cold to the touch. He eventually called 911, and upon arrival the emergency responders pronounced the baby dead. Overturf estimated to the police that her son had been fed only 15 out of the 30 days before his death.

Corbin pled no contest to one count of premeditated first-degree murder, an off-grid person felony. Before sentencing, he filed a motion pursuant to K.S.A. 2015 Supp. 21-6622(b) and requested the court determine if he was a person with "intellectual disability." Per subsection (f) of the statute, such a person would not be subject to a "mandatory term of imprisonment" as part of his or her sentence. K.S.A. 2015 Supp. 21-6622(f).

The court considered Corbin's motion and two evaluations he provided. One was conducted by Trevor Patton, Ph.D., of The Therapy Center, and another by Roy Daum, Psy.D., of Larned State Hospital as part of Corbin's presentence investigation.

Emphasizing the testing described in the reports, the court concluded there was not sufficient reason to believe Corbin was a person with intellectual disability:

"The Court's reviewed the reports and the Court does not find that the defendant has significantly subaverage general intellectual functioning based upon the testing.

"Court would note that Dr. Patton's findings was there's a full scale IQ score of 95 for the defendant, which is in the lower end of the average range; that his general cognitive ability is in the lower end of the average range; that his word recognition, spelling, arithmetic are all in the lower end of the average range.

"Larned State Hospital [Dr. Daum] found there was some mild intellectual disability range of intellectual functioning, but does not find that he was significantly subaverage. Matter of fact in the RIAS testing it [was] described as moderately below average intellectual functioning within the designated areas, but there is some evidence of limited—limited intellectual adaptive behavior functioning.

"Based upon the two reports the court does not find they establish in this court's view sufficient reason to believe that Mr. Corbin is a person with intellectual disability as it's defined by this statute and there certainly is nothing in the reports to indicate that it's—any intellectual disability he may have, however slight or lower end of the range, substantially impaired his capacity to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law.

"Matter of fact, Larned State Hospital noted statements made by Mr. Corbin as to actions he might take once he was in the Department of Corrections and that they believed he understood exactly what he was saying and took that very seriously, which would not indicate they believed that it was impairing his capacity to understand the criminality of the conduct or to conform his behavior, that he had made a conscious decision to possibly take such action."

4

At sentencing, the court rejected Corbin's renewed motion to find he suffered from an intellectual disability:

> "[T]he court's findings would be the same as I made last week when I heard that motion. The court does not believe that the reports submitted to the court support a finding that Mr. Corbin is suffering from an intellectual disability *as defined by the statute*." (Emphasis added.)

The court sentenced Corbin to a hard 25 life sentence. Corbin timely appealed his sentence.

The parties filed a joint motion to waive oral argument. We denied it and instead ordered supplemental briefing on the effect, if any, of a later amendment to a statute—K.S.A. 76-12b01—that supplies part of the definition of intellectual disability in K.S.A. 2015 Supp. 21-6622(b). Both parties responded and later submitted a renewed motion to waive oral argument which this court granted.

Our jurisdiction is under K.S.A. 2015 Supp. 22-3601(b)(3), (4) (maximum sentence of life imprisonment imposed for an off-grid crime [first-degree murder]).

More facts will be added as necessary to the analysis.

ANALYSIS

Issue: *Did the district court err when it denied Corbin's motion to determine if he is a person with intellectual disability?*

Corbin presents only one issue: Whether the district court should have determined there was "sufficient reason to believe" that he was a person with an intellectual disability under K.S.A. 2015 Supp. K.S.A. 21-6622(b). He specifically argues that enough evidence exists to warrant an evidentiary hearing under 21-6622(b) and (c). The State counters that

5

Corbin did not make a sufficient showing of intellectual disability to warrant a full evidentiary hearing on his status.

*Standard of review*

When reviewing the district court's denial of a defendant's motion to determine if he or she is a person with intellectual disability, this court applies an abuse of discretion standard. *State v. Maestas*, 298 Kan. 765, 785, 316 P.3d 724 (2014) (reviewing previous version of intellectual disability statute, K.S.A. 21-4634); *State v. Backus*, 295 Kan. 1003, 1015, 287 P.3d 894 (2012) (same).

Our abuse of discretion standard is well-established:

"'Judicial discretion is abused if judicial action:  (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.'" *State v. Shank*, 304 Kan. 89, 92, 369 P.3d 322 (2016).

The party asserting an abuse of discretion bears the burden of establishing such abuse. See *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 (2008). So that burden is Corbin's.

*Discussion*

K.S.A. 2015 Supp. 21-6622 precludes a district court from imposing a sentence of death, life without possibility of parole, or a mandatory term of imprisonment for premeditated first-degree murder upon a defendant determined to be a person with

intellectual disability. To determine who falls under the statutory protections, the statute creates a "two-step process for a district court to consider a convicted defendant's claim of [intellectual disability]." See *Maestas*, 298 Kan. at 783.

First, subsection (b) establishes a threshold requirement that the district court must determine, without a hearing, whether there is "sufficient reason to believe" the defendant is a person with intellectual disability:

> "[I]f a defendant is convicted of the crime of murder in the first degree based upon the finding of premeditated murder, the defendant's counsel . . . may request a determination by the court of whether the defendant is a person with intellectual disability. [1] *If the court determines that there is not sufficient reason to believe that the defendant is a person with intellectual disability*, the court shall so find and the defendant shall be sentenced in accordance with K.S.A. 21-6620, 21-6623, 21-6624 and 21-6625, and amendments thereto. [2] *If the court determines that there is sufficient reason to believe that the defendant is a person with intellectual disability*, the court shall conduct a hearing to determine whether the defendant *is* a person with intellectual disability." (Emphasis added.) K.S.A. 2015 Supp. 21-6622(b).

Per the statute, if the court does not find sufficient reason to believe the defendant is a person with intellectual disability, then he or she is sentenced under K.S.A. 2015 Supp. 21-6620, K.S.A. 2015 Supp. 21-6623, K.S.A. 2015 Supp. 21-6624, and K.S.A. 2015 Supp. 21-6625—*i.e.*, the defendant is given a standard sentence. But if the court does find sufficient reason to believe "the defendant *is* a person with intellectual disability," then it proceeds to a full hearing on that issue. (Emphasis added.) K.S.A. 2015 Supp. 21-6622(b).

7

For this second step of the process, subsection (c) provides the procedure the court follows at the full hearing:

"*At the hearing, the court shall determine whether the defendant is a person with intellectual disability*. The court shall order a psychiatric or psychological examination of the defendant. For that purpose, the court shall appoint two licensed physicians or licensed psychologists, or one of each, qualified by training and practice to make such examination, to examine the defendant and report their findings in writing to the judge within 14 days after the order of examination is issued. The defendant shall have the right to present evidence and cross-examine any witnesses at the hearing." (Emphasis added.) K.S.A. 2015 Supp. 21-6622(c).

Next, subsections (e) and (f) provide guidance to the court—depending on the outcome of the full hearing. If the court ultimately determines the defendant is not a person with intellectual disability, then he or she is sentenced in accordance with K.S.A. 2015 Supp. 21-6620, 21-6623, 21-6624, and 21-6625. K.S.A. 2015 Supp. 21-6622(e). But if the court determines the defendant "*is* a person with intellectual disability," then it cannot sentence him or her to death, life without the possibility of parole, or to a mandatory term of imprisonment. (Emphasis added.) K.S.A. 2015 Supp. 21-6622(f).

To make the findings required under K.S.A. 2015 Supp. 21-6622(b) concerning intellectual disability, the district court must apply that phrase's statutory meaning. See *Maestas*, 298 Kan. at 783. Two separate statutes supply that definition. 298 Kan. at 783.

First, subsection (h) of K.S.A. 2015 Supp. 21-6622 defines intellectual disability as "having significantly subaverage general intellectual functioning, *as defined by K.S.A. 76-12b01*, and amendments thereto, to an extent which substantially impairs one's capacity to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law." (Emphasis added.)

8

In turn, subsection (i) of K.S.A. 76-12b01 defines "significantly subaverage general intellectual functioning." Before July 1, 2016, subsection (i) exclusively defined it as "performance which is two or more standard deviations from the mean score on a standardized intelligence test specified by the secretary."

But the 2016 legislature amended the statute to include additional ways of establishing subaverage general intellectual functioning beyond particular performance on standardized intelligence tests. It now provides:

"'[1] Significantly subaverage general intellectual functioning' *may be established by* performance which is two or more standard deviations from the mean score on a standardized intelligence test specified by the secretary. *Such standardized intelligence test shall take into account the standard error of measurement,* [2] *and subaverage general intellectual functioning may be established by means in addition to standardized intellectual testing. The amendments made to this subsection by this act shall be construed and applied retroactively*." (Emphasis added.) L. 2016, ch. 108, sec. 1.

This court has stated: "When an applicable statute is amended while an appeal is pending, and counsel for both sides have had an opportunity to brief and argue the amended statute, the appellate court will consider and construe the amended version of the statute." *State ex rel. Secretary of SRS v. Bohrer*, 286 Kan. 898, 904, 189 P.3d 1157 (2008). In the instant case, we provided both parties those opportunities. So we may consider the amended statute. See 286 Kan. at 904.

Now that we have determined to consider the amended statute, the next question is whether we will apply it retroactively. See *Bohrer*, 286 Kan. at 904 (deciding to consider amendment on appeal and then determining whether it should be applied retroactively). Generally, a statute operates prospectively unless there is clear language indicating the

legislature intended it to operate retrospectively. *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 460, 264 P.3d 102 (2011).

But here the parties do not challenge the retroactive application of the amendments. Accordingly, for purposes of this appeal, we assume without deciding that those amendments apply retroactively. See *Keiswetter v. State*, 304 Kan. 362, 367, 373 P.3d 803 (2016); see also *State v. Sutherland*, 248 Kan. 96, 106-07, 804 P.2d 970 (1991) (assuming a statute was constitutional because constitutionality was not challenged).

Corbin argues that, at a minimum, this court should remand for a new hearing to apply the amended statute. Specifically, he argues the district court used a defunct legal standard which makes it impossible to review that court's decision for abuse of discretion.

The State responds that the amended definition does not change the outcome of the case because the new definition does not impact the district court's findings of fact or conclusions of law. See, *e.g.*, *Stueckemann v. City of Basehor*, 301 Kan. 718, 750-51, 348 P.3d 526 (2015) (affirming district court's inquiry that met the expansive concept of reasonableness in test later articulated by the supreme court).

We disagree with the State. To make the required determination of intellectual disability, a district court must look at the definition provided in K.S.A. 76-12b01. Here, the parties and district court only had an opportunity to consider and apply the version of K.S.A. 76-12b01 that predated the 2016 amendments. It exclusively defined significant subaverage general intellectual functioning as "performance which is two or more standard deviations from the mean score on a standardized intelligence test." K.S.A. 2015 Supp. 76-12b01(i). The findings of the district court reveal it understandably followed that narrow statutory course.

Corbin submitted two evaluations as evidence of his intellectual disability. The 14-page report by Dr. Patton disclosed a "[f]ull [s]cale IQ score of 95, which is in the lower end of the average range." The court specifically cited the results of that score-generating test—according to the record, a "Wechsler Adult Intelligence Scale, 4th Edition (WAIS-IV)"—to support its finding that "based upon the testing," Corbin did not have "significantly subaverage general intellectual functioning." See *United States v. Arterberry*, 2015 WL 1004725, at *2 (E.D. Mich. 2015) (unpublished opinion) (WAIS-IV is "often considered the 'gold standard' in intelligence testing, provides an 'approximation of an individual's overall cognitive functioning' and includes various subsections to test different cognitive abilities.").

The court also cited the result of Corbin's second evaluation—specifically, "RIAS [Reynolds Intellectual Assessment Scales] testing" by Dr. Daum at the Larned State Hospital—as additional support for its finding that Corbin did not have "significantly subaverage general intellectual functioning based upon the testing." Dr. Daum's 9-page report describes it as "a norm-referenced individually administered test of intelligence that can provide an overall measure of intelligence based on two index scores:  Verbal Intelligence Index (VIX) and the Nonverbal Intelligence Index (NIX)." As correctly stated by the court, Dr. Daum's report showed RIAS testing of Corbin revealed only "moderately below average intellectual functioning within the designated areas."

Indeed, outside of the court's reference to some statements Corbin made regarding actions he might take once he was in the Department of Corrections, it exclusively relied upon the results of these two standardized intelligence tests.

The State acknowledges that the statutory amendments permit the determination of intellectual disability to be established by means in addition to standardized intellectual testing and points out that Corbin presented evidence in addition to a mean score on such

11

tests. For example, the two reports also included information about Corbin's psychiatric and social history and the interviewing doctors' observations. But just as the original statute led the district court to focus on the results of the standardized intelligence tests, it may also have caused Corbin to feel prohibited from submitting evidence of additional means in order to establish his intellectual disability—means now permitted under the new definition.

Given our assumption that the 2016 amendments to K.S.A. 76-12b01 apply retroactively, then we must remand under these circumstances. See *State v. Garza*, 295 Kan. 326, 335, 286 P.3d 554 (2012) (an appellate court does not serve as a finder of fact). Contrary to Corbin's request, however, we do not order a hearing under K.S.A. 2015 Supp. 21-6622(c). Rather, we conclude that the best course is to afford the district court an opportunity to review Corbin's motion again under K.S.A. 2015 Supp. 21-6622(b)— but with a wider outlook. In that review, after again considering the reports of Drs. Patton and Daum, the court may decide to allow additional evidence.

Accordingly, we reverse and remand to the district court with directions to reconsider Corbin's motion under the current version of K.S.A. 76-12b01 in conjunction with K.S.A. 2015 Supp. 21-6622(b).