No. 102,951

STATE OF KANSAS, *Appellee*, v. JOHN BACKUS, *Appellant*.

(287 P.3d 894)

1004

Opinion filed
November 2, 2012.

*Michael J. Bartee*, of Michael J. Bartee, P.A., of Olathe, argued the cause and was on the brief for appellant.

*Sheryl L. Lidtke*, deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: John Backus directly appeals his convictions for premeditated first-degree murder, aggravated kidnapping, and aggravated robbery in the 2005 death of Dollar General manager Robin Bell in Bonner Springs. Backus' brief to this court raises six issues, which we will paraphrase as follows: (1) The district court erred in denying Backus' request for a lesser included offense instruction on second-degree murder; (2) the district court erred in giving an *"Allen*-type" jury instruction; (3) the district court's denial of Backus' new trial motion was an abuse of discretion; (4) the district court erroneously admitted inflammatory photographs; (5) the district court erred in finding that the evidence failed to establish a reason to believe that Backus is mentally retarded; and (6) cumulative error denied the defendant a fair trial. Finding no error that would require reversal, we affirm Backus' convictions.

## FACTUAL AND PROCEDURAL OVERVIEW

In 2005, the defendant and three other young people, Robert Haberlein, Christa Lewis, and an under aged female, A.R., set about planning a robbery to obtain money to fix the defendant's car. After a reconnaissance trip, the group settled on the Dollar General store as a target because it lacked surveillance cameras. Later, Lewis would tell a detective that "a decision was made that there would be no witnesses, whoever was in the store, that there would be no witnesses, that there was going to be a homicide."

On the day of the robbery, Lewis backed out at the last minute. The three others entered the chosen store just before closing. Backus went to the back of the building while Haberlein and A.R. pretended to shop. A.R. and Haberlein approached Bell, who was tending the cash register, and Haberlein put a gun to her head and demanded that she empty the register into a bag. After taking the register money, Haberlein ordered Bell to the back office, where shots were fired and Bell was forced to open the locked office safe. She escaped momentarily, but Backus dragged her back into the store where he and Haberlein savagely and unmercifully beat her with a number of objects before Haberlein shot her in the head. Backus grabbed the bag of money and all three left the store.

Later that night, A.R. and Haberlein burned the robbers' bloody clothes. The next day, A.R.'s mother helped her daughter and Haberlein dispose of the gun in exchange for sharing the money with A.R., Haberlein, and Backus.

The crime remained unsolved for almost 2 years until Christa Lewis, Haberlein's girlfriend and a friend of A.R., was reported as a runaway. On September 21, 2007, Lewis and Haberlein appeared at the police station to discuss her runaway status. At some point, the officers discovered that Haberlein was wanted for questioning about another investigation, and during his interview, Haberlein revealed bits of information regarding Bell's murder. That information eventually led the police to A.R., who gave two statements (one videotaped) to the police about the events of that night. That led the police back to Lewis, who provided a detailed statement, which included incriminating statements made by Backus and Haberlein in the days following the incident.

Backus was eventually charged with first-degree premeditated murder, or in the alternative, first-degree felony murder; aggravated kidnapping; and aggravated robbery. Haberlein was charged and tried separately. As of the date of Backus' trial, A.R. had not yet been tried for the crime, but in exchange for her testimony against Haberlein and Backus, the State had agreed to try her as a juvenile.

The forensic pathologist who performed the autopsy provided extensive testimony about the injuries inflicted upon Bell, con-

cluding that she "died as a result of being basically bludgeoned, and then also she had contributory effects from the gunshot wounds." The doctor opined that Bell was still alive when she received the gunshot wounds, albeit he could not discern whether they occurred before or after the bludgeoning injuries.

At trial, the State introduced into evidence numerous photographs of the autopsy and the crime scene. Backus objected to the admission of 10 of those photos as unduly gruesome, repetitive, and prejudicial. The district court sustained the objection to two of the photos that it regarded as cumulative, but admitted the other eight photographs.

Backus also requested a lesser included offense instruction on second-degree murder. The court declined the request, reasoning that the evidence of the underlying felony in the felony-murder charge was so strong that there was no basis for including the requested instruction. Also, without objection from either party, the trial court gave an *Allen*-type instruction that included the declaration: "Another trial would be a burden on both sides."

After the jury convicted Backus of first-degree premeditated murder, aggravated kidnapping, and aggravated robbery, he filed a motion for new trial. One basis for the motion was an allegation of newly discovered evidence, supported by an affidavit from Backus' father. In the affidavit, Backus' father said that, although he had initially forgotten, he was now certain that Backus was at his home assisting with the sorting of Christmas decorations from 6 p.m. until they went to bed on the night of the murder. The motion also alleged that there was insufficient direct evidence tying Backus to the murder, that his motion for a directed verdict should have been granted, that the prosecutor made improper arguments during closing based on evidence not in the record, and that the admission of the contested photographs was erroneous. After entertaining arguments, the district court denied the motion in full.

Because the State filed notice that it intended to seek the hard 50 life sentence, Backus also filed a motion to determine his status as a mentally retarded person pursuant to K.S.A. 21-4634, because the court may not impose a hard 50 sentence on a mentally retarded person. When the motion was initially filed, the district

court allowed Backus' father to testify regarding the issue. Specifically, Backus' father testified that Backus had never officially been diagnosed as mentally retarded, although his high school had listed him as a special education student. On that showing, the district court denied the motion for an evaluation but left open the possibility of the defense renewing the motion when it obtained Backus' school records and other documentation. After those records were filed, the district court entertained the renewed motion, and again denied it at the first stage, concluding, "Certainly there were some learning problems and significant other problems, but nothing that would be an indication that the defendant was mentally retarded. . . . I don't think there is a basis for me to appoint physicians or psychologists to investigate further."

Consequently, the district court imposed the hard 50 life sentence for first-degree premeditated murder based on the lack of mitigating factors and the weight of the aggravating factors: That "the crime was committed in order to avoid or prevent arrest or prosecution; [and] that the crime was committed in an especially heinous, atrocious or cruel manner." The court imposed consecutive sentences of 586 months for aggravated kidnapping and 59 months for aggravated robbery. The case is now before us on direct appeal.

### LESSER INCLUDED OFFENSE INSTRUCTION ON SECOND-DEGREE MURDER

The State charged Backus in the alternative with both types of first-degree murder: premeditated murder and felony murder. Backus requested that the trial court give a lesser included offense instruction on second-degree intentional murder. At that time, there was a special rule for a felony-murder charge whereby lesser included offense instructions were required only when the evidence of the underlying felony was weak, inconclusive, or conflicting. See *State v. Berry*, 292 Kan. 493, 503, 254 P.3d 1276 (2011) (citing *State v. Hoffman*, 288 Kan. 100, 105, 200 P.3d 1254 [2009]). The trial judge denied the requested instruction based on the special felony-murder rule but did not assess whether the lesser included offense instruction was appropriate for the premeditated

first-degree murder charge on which Backus was ultimately convicted. Backus contends that the trial court's erroneous omission requires us to reverse his murder conviction and remand for a new trial.

*Standard of Review/Legal Maxims*

Recently, we attempted to set forth a more consistent analytical progression for reviewing jury instruction issues with accompanying standards of review for each step. See *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). The last step in the progression applies where the appellate court has determined that the district court erred. At that point, "the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *Plummer*, 295 Kan. 156, Syl. ¶ 1. "This assessment of whether there has been injustice would involve a review of the entire record and a de novo determination. *Cf. State v. Ward*, 292 Kan. 541, Syl. ¶ 8, 256 P.3d 801 (2011) (harmless error analysis performed de novo), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012).

*Analysis*

It was not enough for the district court to apply the special lesser included offense rule then applicable to the alternative felony murder charge. The court should have analyzed the propriety of giving a lesser included offense instruction for the first-degree premeditated murder charge under the statutory directive in K.S.A. 22-3414(3). That provision requires the trial court to give a requested lesser included offense instruction if "there is some evidence which would reasonably justify a conviction of [that] lesser included crime."

But in fairness to the trial court, the entire landscape of lesser included offense instructions has undergone a makeover since Backus' trial. Therefore, we take the liberty of moving directly to the final step in the analytical progression to resolve the issue in

this case on the basis that the failure to give a second-degree murder instruction was harmless error.

As noted, we use the harmlessness test set forth in *Ward*:

"[B]efore a Kansas court can declare an error harmless it must determine the error did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome. The degree of certainty by which the court must be persuaded that the error did not affect the outcome of the trial will vary depending on whether the error implicates a right guaranteed by the United States Constitution. If it does, a Kansas court must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict. If a right guaranteed by the United States Constitution is not implicated, a Kansas court must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial." 292 Kan. at 565.

Again, the parties did not have the benefit of this holding when they submitted their briefs in this case. Therefore, we are not presented with any arguments on whether the error implicates a right guaranteed by the United States Constitution, *e.g.*, a defendant's right to present a defense. But that omission will not deter our resolution of this issue here and now, because even under the more stringent test, we are firmly convinced beyond a reasonable doubt that there was no impact on the trial's outcome.

The jury heard a detective testify that Lewis, the nonparticipating co-conspirator, told him that after the four had selected the Dollar General store as their target, "a decision was made that there would be no witnesses, whoever was in the store, that there would be no witnesses, that there was going to be a homicide." Although Lewis did not repeat that statement in her trial testimony, the evidence of what transpired in the store corroborated that intent. The jury heard that, when the victim escaped out of the store, Backus ran her down and forcibly brought her back into a storeroom. There, he and Haberlein savagely beat her about the head, utilizing multiple objects as weapons, including a stepladder, a piece of which the pathologist found inside the victim's head during the autopsy. If the jury believed that Backus participated in the killing, it had to find that it was a cold, calculated, and premeditated act. There is no reasonable possibility that a lesser included offense instruction would have contributed to the verdict.

## *ALLEN*-TYPE INSTRUCTION

For the first time on appeal, Backus complains that the district court gave an instruction which included the statement that another trial would be a burden on both sides. He points out that we have found that jury instruction to be erroneous. See *State v. Salts*, 288 Kan. 263, 266-67, 200 P.3d 464 (2009).

But because Backus did not properly preserve the instruction complaint, K.S.A. 22-3414(3) requires that the omission be clearly erroneous in order to be both reviewable and reversible. See *Williams*, 295 Kan. at 515. The test to determine whether an unpreserved instruction error requires reversal is "whether the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." *Williams*, 295 Kan. at 516.

### Standard of Review/Legal Maxims

An assessment of whether an unpreserved instruction error requires reversal involves a review of the entire record and a de novo determination. *Williams*, 295 Kan. at 516.

### Analysis

The State points out that our decision in *Salts* had not been filed when this case was tried. Nevertheless, it concedes that advising the jury that "another trial would be a burden on both sides" was erroneous. The State's position is that the evidence was substantial and compelling, leaving no real possibility of a different verdict if the jury had not heard the *Allen*-type instruction. We agree.

As we clarified in *Williams*, Backus must shoulder the burden of convincing us that the jury would have reached a different verdict had the instruction error not occurred. In his brief, Backus acknowledges that no Kansas case has yet found that the offending instruction language, standing alone, creates a reversible error. Yet the only argument that he proffers as to why his case should be the first is contained in one sentence: "The defendant asserts that, without the erroneous language, there is a likelihood that the jury would not have returned guilty verdicts in this case."

Given Backus' concession in the first issue that "[t]he evidence was sufficient to prove premeditation," and in the absence of any evidence that the jury was having difficulty reaching a verdict, we hold that the defendant has failed to carry his burden to convince us that the jury *would* have reached a different verdict. The instruction error is not reversible.

## DENIAL OF NEW TRIAL MOTION

In a motion for new trial, Backus claimed that he had new evidence in the form of his father's recent recollection that, on the night of the murder, Backus had been with his father. Backus argues that the evidence was new because it did not exist until the father remembered it, sometime after the trial.

### Standard of Review/Legal Maxims

Both parties agree that this court reviews a district court's decision on a motion for a new trial based on newly discovered evidence for an abuse of discretion. See *State v. Rojas-Marceleno*, 295 Kan. 525, Syl. ¶ 11, 285 P.3d 361 (2012); *Moncla v. State*, 285 Kan. 826, 839-40, 176 P.3d 954 (2008) (reviewing order denying motion for new trial based on newly discovered evidence for abuse of discretion).

"The test for determining whether a new trial is warranted on the ground of newly discovered evidence has two parts: (1) whether the defendant has met the burden of establishing that the newly proffered evidence could not with reasonable diligence have been produced at trial and (2) whether the evidence is of such materiality that it would be likely to produce a different result upon retrial." 281 Kan. at 992 (citing *State v. Norton*, 277 Kan. 432, 437, 85 P.3d 686 [2004]).

### Analysis

The only materiality of the father's testimony is to establish an alibi for Backus, *i.e.*, he was with his father assembling Christmas decorations rather than at the Dollar General store bludgeoning a woman to death. By necessity, Backus had to have personal knowledge of his own whereabouts. He did not have to learn where he was on the night of the murder from his father's recollection, *i.e.*, the fact that an alibi witness existed was not unknown to Backus at the time of the trial.

Moreover, Backus' specious argument that a witness need not exercise diligence in producing evidence at trial is completely unavailing. If one believes Backus' father's affidavit, Backus had to personally know that his father was a potential alibi witness, and he was required to exercise diligence in producing that evidence. The record does not reflect that Backus can clear the first hurdle of establishing that the evidence was truly newly discovered. The district court did not err in refusing to order a new trial based on the father's after-the-fact affidavit.

## INFLAMMATORY PHOTOGRAPHS

As noted, Backus objected at trial to the admission of 10 photographs as being unduly gruesome, repetitive, and prejudicial. The district court reviewed the photographs and granted the motion to exclude two of them as being cumulative. Backus contends that the district court erred in admitting the other eight photographs.

### Standard of Review

"When reviewing the admission of photographic evidence, an appellate court's first step is to determine whether the photos are relevant. The decision to admit photographs alleged to be overly repetitious, gruesome, or inflammatory, *i.e.*, prejudicial, is reviewed for an abuse of discretion. [Citations omitted.] The party who challenges that decision bears the burden of showing such abuse. [Citation omitted.] Admission of photographs that are unduly repetitious and cumulative, or that are introduced solely for a prejudicial purpose, constitutes an abuse of discretion, albeit such a finding is rare in a murder case." *State v. Edwards*, 291 Kan. 532, 549, 243 P.3d 683 (2010).

See *State v. Burnett*, 293 Kan. 840, 853, 270 P.3d 1115 (2012); *State v. Riojas*, 288 Kan. 379, 387, 204 P.3d 578 (2009).

### Analysis

Backus complains that because the manner of Bell's death was not disputed at trial, the photographs were largely irrelevant. That argument has been rejected by this court. "Even where the defendant concedes the cause of death, the prosecution has the burden to prove all the elements of the crime charged . . . , including the fact and manner of death and the violent nature of the crime . . . ." *State v. Clark*, 261 Kan. 460, 477, 931 P.2d 664 (1997); see

*State v. Kirby*, 272 Kan. 1170, 1188, 39 P.3d 1 (2002). We have explained the relevancy of photographs in homicide cases as follows:

" ' " 'Photographs depicting the extent, nature, and number of wounds inflicted are generally relevant in a murder case. [Citation omitted.] Photographs which are relevant and material in assisting the jury's understanding of medical testimony are admissible. Specifically, photographs which aid a pathologist in explaining the cause of death are admissible. [Citation omitted.] Photographs used to prove the manner of death and the violent nature of the crime are relevant and admissible. [Citation omitted.]' " ' *State v. Parker*, 277 Kan. 838, 847, 89 P.3d 622 (2004) (quoting *State v. Green*, 274 Kan. 145, 147, 48 P.3d 1276 [2002]).

"Additionally, because the State has the burden to prove every element of the crime charged, photographs used to prove the elements of the crime, including the fact and manner of death and the violent nature of the crime, are relevant even if the cause of death is not contested. [Citation omitted.] Finally, while we have stated that the "wholesale admission of similar grotesque and bloody photographs which add nothing new to the state's case" is improper,' a photograph need not be excluded simply because it is gruesome. [Citation omitted.]" *Burnett*, 293 Kan. at 853-54.

We note that Backus has not included the photographs in the record on appeal in his case, although he refers us to the record on appeal in Haberlein's appellate case. Nevertheless, the district court acknowledged that almost all of the photographs, including some admitted without objection, were gruesome because of the gruesome nature of the crime. Yet the court thoughtfully reviewed and discussed each photograph, identifying permissible reasons for each photograph that was admitted over objection. The photographs were relevant and admissible, and the district court exercised its discretion in an appropriate manner. There is no error here.

### REASON TO BELIEVE THAT DEFENDANT WAS MENTALLY RETARDED

K.S.A. 21-4634 precludes the district court from imposing any mandatory term of imprisonment for premeditated first-degree murder upon a defendant who is determined to be mentally retarded. The statute provides that, upon a defense counsel's request for a determination of whether the defendant is mentally retarded, the court is to take certain steps, as follows:

"(a) If a defendant is . . . convicted of the crime of murder in the first degree based upon the finding of premeditated murder, the defendant's counsel . . . may request a determination by the court of whether the defendant is mentally retarded. If the court determines that there is not sufficient reason to believe that the defendant is mentally retarded, the court shall so find and the defendant shall be sentenced in accordance with K.S.A. 21-4635 through 21-4638. If the court determines that there is sufficient reason to believe that the defendant is mentally retarded, the court shall conduct a hearing to determine whether the defendant is mentally retarded.

"(b) At the hearing, the court shall determine whether the defendant is mentally retarded. The court shall order a psychiatric or psychological examination of the defendant. For that purpose, the court shall appoint two licensed physicians or licensed psychologists, or one of each, qualified by training and practice to make such examination, to examine the defendant and report their findings in writing to the judge within 10 days after the order of examination is issued. The defendant shall have the right to present evidence and cross-examine any witnesses at the hearing. No statement made by the defendant in the course of any examination provided for by this section, whether or not the defendant consents to the examination, shall be admitted in evidence against the defendant in any criminal proceeding.

"(c) If, at the conclusion of a hearing pursuant to this section, the court determines that the defendant is not mentally retarded, the defendant shall be sentenced in accordance with K.S.A. 21-4635 through 21-4638.

"(d) If, at the conclusion of a hearing pursuant to this section, the court determines that the defendant is mentally retarded, the court shall sentence the defendant as otherwise provided by law, and no mandatory term of imprisonment shall be imposed hereunder.

. . . .

"(f) As used in this section, 'mentally retarded' means having significantly subaverage general intellectual functioning, as defined by K.S.A. 76-12b01 and amendments thereto, to an extent which substantially impairs one's capacity to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law." K.S.A. 21-4634.

Here, the district court dealt with the request in the first step, in subsection (a), by finding that there was not sufficient reason to believe that Backus was mentally retarded. On appeal, Backus argues that the evidence of mental retardation was enough to cause the district court to sufficiently believe he was mentally retarded and thus require it to proceed to order an evaluation and hearing.

*Standard of Review*

The parties argue for the application of different standards of review. Backus attempts to frame the issue as one requiring statutory interpretation, which would involve a legal question subject to an unlimited review. *Cf. State v. Jefferson*, 287 Kan. 28, 33, 194 P.3d 557 (2008). But we are not presented with the task of construing what the statute means when it says: "If the court determines that there is not sufficient reason to believe that the defendant is mentally retarded, the court shall so find and the defendant shall be sentenced in accordance with K.S.A. 21-4635 through 21-4638." K.S.A. 21-4634(a). Rather, the issue Backus raises is whether the evidence was sufficient to establish a sufficient reason to believe he was mentally retarded.

The State argues for an abuse of discretion standard, lobbying us to analogize to those cases determining whether a defendant is competent to stand trial under K.S.A. 22-3302. See, *e.g.*, *State v. Lopez*, 271 Kan. 119, 127, 22 P.3d 1040 (2001) ("K.S.A. 22-3302 vests the trial court with authority to determine the question of a defendant's competence to stand trial. On appeal, this court's inquiry is limited to whether the trial court abused its discretion."); see also *State v. Green*, 245 Kan. 398, 412-13, 781 P.2d 678 (1989) ("Whether a hearing on competency is needed during trial is a matter which is left to the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion.").

The State's proposed analog is seductive. Under K.S.A. 21-4634(a), it is the district court that must determine whether there is sufficient reason to believe the defendant is mentally retarded, and, just like the competency to stand trial scenario, the trial judge is in a superior position to make that determination after observing and listening to the defendant. Accordingly, it is appropriate to defer to the district court's assessment by applying an abuse of discretion standard. Therefore, we will evaluate whether any reasonable person would take the view adopted by the district judge. See *State v. Mondragon*, 289 Kan. 1158, 1160-61, 220 P.3d 369 (2009).

*Analysis*

Ultimately, however, our selection of a standard of review does not impact the result in this case. Backus cannot prevail under any review standard simply because there is an absence of any evidence of mental retardation.

In making the assessment under K.S.A. 21-4634(a), the district court was directed to utilize the definition of mental retardation set forth in K.S.A. 76-12b01, which states:

"(d) 'Mental retardation' means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from birth to age 18.

. . . .

"(i) 'Significantly subaverage general intellectual functioning' means performance which is two or more standard deviations from the mean score on a standardized intelligence test specified by the secretary." K.S.A. 76-12b01.

The trial court gave Backus two opportunities to present some evidence, but even viewed in the light most favorable to Backus, the evidence arguably failed to establish that Backus even qualified as a special education student, much less as mentally retarded. Backus' father conceded that Backus had never been diagnosed as mentally retarded and, in fact, said that "[w]e had to fight [the school district] to get him listed as a special education, special needs student for several years, and they finally agreed to that through the high school years." Backus' school records indicated that his test scores from 1993, 1999, and 2003 did not qualify him for special education services. More to the point, Backus' test score did not meet the statutory definition of mentally retarded because it was not two standard deviations or more below the mean. Accordingly, the district court did not err in finding insufficient reason to believe that Backus was mentally retarded.

## CUMULATIVE ERROR

Backus argues that even if no individual trial error is sufficient to support a reversal of his conviction, the cumulative effect of multiple errors was so great as to require reversal. The test is " 'whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial

error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant.' " *Edwards*, 291 Kan. at 553 (quoting *State v. Ellmaker*, 289 Kan. 1132, Syl. ¶ 12, 221 P.3d 1105 [2009]).

*Standard of Review/Legal Maxims*

By necessity, if this court must apply a totality of the circumstances test, we will have to review the entire record and engage in an unlimited review. *Cf. State v. Ward*, 292 Kan. 541, Syl. ¶ 8, 256 P.3d 801 (2011) (harmless error analysis performed de novo).

*Analysis*

Further, for errors to have a cumulative effect that transcends the effect of the individual errors, there must have been more than one individual error. See *State v. Houston*, 289 Kan. 252, 277, 213 P.3d 728 (2009); *State v. Nguyen*, 285 Kan. 418, 437, 172 P.3d 1165 (2007). Above, we found that the giving of the *Allen*-type instruction was error. We also found that the district court applied the incorrect test for determining whether to give a lesser included offense instruction on second-degree murder. Arguably, then, more than one error exists which could be accumulated.

Nevertheless, the instructional errors were not such as would lead us to the conclusion that Backus was denied a fair trial. Moreover, the inculpatory evidence, especially the eyewitness testimony, would certainly fit within the category of overwhelming evidence. In short, we are firmly convinced beyond a reasonable doubt that the result of Backus' trial would have been no different without the instructional errors.

Affirmed.