NOT DESIGNATED FOR PUBLICATION

No. 118,407

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ELLIOTT MAURICE KYLES,
*Appellant*.


MEMORANDUM OPINION


Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed September 14, 2018. Affirmed.


*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.


*James Antwone Floyd*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, P.J., MCANANY and POWELL, JJ.


PER CURIAM: A jury convicted Elliott Maurice Kyles of one count each of aggravated battery and criminal possession of a firearm. On appeal, Kyles argues the district court erroneously (1) excluded relevant evidence integral to his theory of defense that a third party shot the victim in a violent drug deal; (2) admitted unduly prejudicial prior bad act evidence; and (3) denied his motion for a new trial based on newly discovered evidence. Kyles also argues the district court's order requiring him to register as a violent offender violated his constitutional rights as it unlawfully increased his

1

punishment based upon improper judicial fact-finding. After a review of the record, we disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On June 2, 2013, Reginald Johnson parked his black SUV in a convenience store parking lot near 38th Street and Leavenworth Road in Wyandotte County, Kansas. After exiting the SUV, Johnson looked up and saw a man wearing a light-blue hooded sweatshirt with the hood up and his hand inside the sweatshirt pocket. Johnson saw the man get out of an SUV parked directly in front of the store. As the man came towards Johnson, he pulled off the hood and Johnson recognized him as Eli, someone he knew in passing but later learned his last name was Kyles. Kyles stated something like, "I told you I was going to get your bitch ass." Believing that Kyles had a gun, Johnson ran across the street towards a wooded area.

Johnson dove into some bushes, landed on his stomach, and became entangled in the brush. When he turned around, Johnson saw Kyles was walking towards him about 3 to 4 feet away. Kyles shot Johnson once above his right eye with a black revolver. The bullet entered his head above his right eyebrow and exited behind his ear. Johnson briefly blacked out but when he came to he did not have anything in his pockets. He stated at trial that he went to the store with about $5,700 in cash, two cell phones, and his car keys. Johnson realized that he could move his legs, so he stood up and walked back to the parking lot. Nicklas Washington, who saw the men run across the street and heard two gun shots, approached Johnson and called the police. The wound to his forehead caused Johnson to lose a lot of blood.

Kansas City, Kansas Police Officers Andrew Wilcox and Cameron Morgan arrived at the convenience store parking lot between 3:30 and 4 p.m. Wilcox and Morgan each testified that Johnson stated in the parking lot that Eli shot him. Wilcox testified that

2

Johnson was going in and out of consciousness and could not give him much more information. Johnson testified that he did not recall talking to the police officers in the parking lot after the shooting.

An ambulance transported Johnson to the hospital. Wilcox followed the ambulance and talked with Johnson about one hour later. Wilcox testified that Johnson was coherent and did not appear to be under the influence of alcohol or drugs. Johnson told Wilcox that Eli approached him after Johnson exited his vehicle and robbed him of $5,700 in cash and cell phones. Johnson described Eli as a black male in his 30s with short, Afro-style hair.

After Johnson identified Kyles as the shooter in a photo lineup, the State charged Kyles with one count of aggravated battery, one count of aggravated robbery, and one count of criminal possession of a firearm. Before trial, the State filed and the district court granted a motion in limine which prevented Kyles from presenting evidence that the shooting resulted from a violent drug deal. The district court held that the parties could, however, present evidence about whether Johnson's drug use affected his perception and that Kyles confronted Johnson a few weeks before the shooting at a barber shop.

In November 2016, the State brought Kyles to trial before a jury. At the trial, Johnson admitted that he had smoked marijuana a few hours before the June 2013 shooting and that he had smoked phencyclidine (PCP) the day before. Johnson testified that neither drug affected his perception.

Johnson testified that he had known Kyles for about five years. He described Kyles as neither his friend, acquaintance, nor enemy but that the two men were usually cordial and knew of each other. Johnson also described a confrontation that he had with Kyles at a barber shop a few weeks before the shooting. Kyles approached with his hands

3

in his pocket while Johnson was waiting for his sons to get haircuts. Johnson believed Kyles had a gun although he did not see one. Kyles tried to take his car keys and told Johnson to give him what he had in his pockets. Johnson refused and called Malinda Long to pick up their sons. As Johnson drove away from the barber shop, a car chased him to a nearby police station. The chase ended at the police station, so Johnson did not file a police report. Johnson also stated that Kyles was not wearing a hooded sweatshirt at the barber shop.

Following the presentation of the evidence, the jury acquitted Kyles of aggravated robbery but convicted him of aggravated battery and criminal possession of a firearm. Before sentencing, Kyles moved for a new trial based on newly discovered evidence. Kyles asserted that two witnesses contacted his attorney after his trial—Stephanie Wilson and Charles Borsella—and each witness would testify that they were with Kyles at his house near the time of the shooting. The district court denied Kyles' motion after hearing argument, holding the evidence was not newly discovered.

At sentencing, the district court found Kyles committed a person felony with a deadly weapon and ordered Kyles to register as a violent offender under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. The district court denied Kyles' motion for downward durational and dispositional departures and sentenced him to a controlling 68-month prison term.

Kyles timely appeals.

4

I. DID THE DISTRICT COURT VIOLATE KYLES' FUNDAMENTAL RIGHT TO PRESENT HIS THEORY OF DEFENSE?

Kyles first argues that the district court violated his fundamental right to present his theory of defense by excluding evidence that the shooting may have occurred between Johnson and a third party during a dangerous drug deal.

When reviewing an evidentiary challenge and a claim the district court violated a defendant's constitutional right to present his or her theory of defense, our Supreme Court has explained that

"[a] criminal defendant has the right, under both the Kansas and United States Constitutions, to present the theory of his or her defense, and the exclusion of evidence that is an integral part of that theory violates the defendant's fundamental right to a fair trial. In order to constitute error, the excluded evidence supporting the defense theory must be relevant, admissible, and noncumulative. A defendant's right to present evidence in support of a defense is subject to certain restraints: the evidence must be relevant, and evidentiary rules governing admission and exclusion of evidence are applied. [Citations omitted.]" *State v. Robinson*, 306 Kan. 431, 436, 394 P.3d 868 (2017).

A. *Did the district court err in excluding relevant evidence?*

In examining whether a district court violated a defendant's right to present his or her theory of defense on appeal, we apply a multistep analysis to the district court's decision as to whether to admit or exclude evidence.

"[T]he first question is relevance. K.S.A. 60-401(b) defines relevant evidence as evidence that is probative and material. On appeal, the question of whether evidence is probative is judged under an abuse of discretion standard; materiality is judged under a de novo standard. Review of whether a trial court erroneously excluded evidence that is integral to

5

the defendant's theory of his or her defense is de novo. [Citations omitted.]" 306 Kan. at 435-36.

"'Judicial discretion can be abused in three ways: (1) if no reasonable person would have taken the view adopted by the trial court; (2) if the judicial action is based on an error of law; or (3) if the judicial action is based on an error of fact.' [Citation omitted.]" *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

      1.     *The Theory of Defense*

Before trial, the State filed a motion in limine asking the district court to exclude evidence that the shooting resulted from a drug deal gone wrong. Kyles proffered that he intended to present an alibi defense given his assertion that he was not present and that a third party shot Johnson during a drug deal based on the following evidence: Washington thought the shooting stemmed from a drug deal because of the location and Johnson's SUV; Johnson admitted he used illegal drugs before the shooting; Johnson had $5,700 in cash and two cell phones; before the shooting, Johnson received a phone call from a number that did not accept incoming calls; the wooded area near the store was known for drug deals; and the convenience store owner had sold drugs out of the store. After hearing argument, the district court granted the State's motion in limine and held that the proffered evidence amounted to mere speculation that Johnson was involved in a drug deal. However, the district court permitted Kyles to examine all witnesses about the shooter's identity, to question Johnson on how the drugs affected his ability to perceive events, and to present an alibi defense.

To consider what evidence was integral to Kyles' defense, we review what the State needed to prove to convict Kyles. First, the State charged Kyles with one count of aggravated battery under K.S.A. 2012 Supp. 21-5413(b)(1)(A), which required proof that Kyles knowingly caused great bodily harm or disfigurement to Johnson. Second, the

6

State charged Kyles with one count of aggravated robbery under K.S.A. 21-5420(b), which required proof that Kyles knowingly took property by force or threat of bodily harm to Johnson while either (1) armed with a dangerous weapon or (2) inflicting bodily harm upon any person during the robbery. Third, the State charged Kyles with one count of criminal possession of a firearm under K.S.A. 2012 Supp. 21-6304(a)(3)(A), which required proof that Kyles possessed a weapon and had been convicted of an enumerated felony listed in K.S.A. 2012 Supp. 21-6304(a)(3)(A) within the last 10 years.

### 2.    *Relevance*

Generally, "all relevant evidence is admissible." K.S.A. 60-407(f). Relevant evidence has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). The definition has two elements: a materiality element and a probative element. "Material evidence tends to establish a fact that is at issue and is significant under the substantive law of the case. Probative evidence requires only a logical connection between the asserted fact and the inference it is intended to establish." *Robinson*, 306 Kan. at 436.

Kyles argues the district court prevented him from presenting his theory of defense by excluding evidence establishing that Johnson may have been involved in a drug deal which resulted in the shooting by a third party. He also argues the excluded drug-related evidence is relevant and amounts to more than mere speculation because courts have found that drug deals tend to result in violence and police officers rely on similar evidence to justify investigations into drug activity.

Kyles' argument misses the mark; the excluded evidence does not relate to a material fact. The material fact in dispute—based on Kyles' defense—is the identity of the shooter, and the excluded evidence is not relevant to proving identity. The fact that Johnson had $5,700 in cash, two cell phones, had drugs in his system, went to a store where the owner sold drugs in the past, and was in an area known as a dangerous or high-

7

drug trafficking area has little probative or logical connection to establishing the shooter was someone other than Kyles. The evidence also is not material. While it may show the shooting resulted from dangerous activity, the evidence is of minor significance in determining who shot Johnson. Instead, the evidence merely speculates that Johnson may have been engaged in a violent drug deal with a third party—it does not imply that a third party shot Johnson. See *State v. Seacat*, 303 Kan. 622, 643, 366 P.3d 208 (2016) ("Speculative evidence is inadmissible."). Thus, we are unpersuaded by Kyles' argument because evidence of a drug deal gone bad is not relevant to a disputed material fact.

## II. DID THE DISTRICT COURT ERR IN ADMITTING PRIOR BAD ACT EVIDENCE UNDER K.S.A. 2017 SUPP. 60-455?

Next, Kyles argues the district court erred in admitting prior bad act evidence under K.S.A. 2017 Supp. 60-455, specifically the evidence that Kyles confronted Johnson at a barber shop a few weeks before the shooting.

"Under the plain and unambiguous language of the statute, evidence of prior crimes or civil wrongs cannot be admitted to prove a criminal defendant's propensity to commit the charged crime, but it can be 'admissible when relevant to prove some other material fact.' K.S.A. 60-455." *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006). K.S.A. 2017 Supp. 60-455(b) allows the admission of prior crime and civil wrong evidence "when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." This list is nonexclusive. *State v. Lloyd*, 299 Kan. 620, 639, 325 P.3d 1122 (2014).

As an initial matter, we note that the State attempts to argue that the district court did not err in admitting the evidence because Kyles committed no prior crime or civil wrong under K.S.A. 2017 Supp. 60-455 at the barber shop. We disagree. At the pretrial hearing, Johnson testified that weeks before the shooting he was at a barber shop with his

8

two sons and Kyles walked up to him with his hand in his pocket, accused Johnson of breaking into his home, and told Johnson to hand over his car keys and what he had in his pockets. At trial, Johnson did not testify that Kyles accused him of breaking into his home, but his testimony otherwise remained similar. Johnson also testified, presumably out of concern for the safety of his sons, that Kyles' behavior caused him to call his sons' mother to pick up the boys. This testimony, if true, appears to establish that Kyles committed an assault or attempted robbery against Johnson, both of which are criminal acts. Thus, the district court properly reviewed whether to admit the evidence under K.S.A. 2017 Supp. 60-455.

> "When admitting prior crime evidence under K.S.A. 2015 Supp. 60-455, the district court first determines whether the fact to be proven by the evidence is material, then considers whether the evidence is relevant to a disputed fact, and, finally, decides whether the probative value of the evidence outweighs the potential for undue prejudice. . . . An appellate court reviews [whether the probative value outweighs the prejudice potential] for an abuse of discretion. 'A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion is based.' [Citations omitted.] *State v. Perez*, 306 Kan. 655, 670, 396 P.3d 78 (2017).

If all three requirements are met and the district court admits the prior bad act evidence in a jury trial, "'the district court must give the jury a limiting instruction telling the jury the specific purpose for which the evidence has been admitted (and reminding them that it may only be considered for that purpose).'" *State v. Longstaff*, 296 Kan. 884, 892, 299 P.3d 268 (2013) (quoting *State v. Torres*, 294 Kan. 135, 140, 273 P.3d 729 [2012]).

Significantly, Kyles does not contest that the evidence is material towards proving two disputed material facts: motive and identity. Instead, Kyles' principal argument is that the evidence of the prior confrontation at the barber shop lacked probative value but,

9

even if probative, was unduly prejudicial, meaning its prejudicial effect outweighed any probative value.

Prior bad act evidence causes undue prejudice when

"'the evidence is likely to contribute to an improper jury verdict or distract from the central issues at trial.' When prior misconduct 'involve[s] the same victims[ ] and the conduct at issue was of the same character as that underlying the charged crimes,' the misconduct is 'unlikely to contribute to an improper jury verdict,' as long as the jury is properly instructed. [Citations omitted.]" *Perez*, 306 Kan. at 671.

Kyles argues that the evidence was, at best, only marginally probative as to motive and claims the incident at the barber shop improperly paints him as aggressive and out of control, making it highly prejudicial propensity evidence.

"'[M]otive is the moving power that impels one to action for a definite result.' Evidence of motive is an attempt to explain why a defendant did what he or she did. [Citations omitted.]" *State v. Wells*, 289 Kan. 1219, 1227, 221 P.3d 561 (2009). A defendant's motive is generally relevant in a criminal case, although it is not an element of most crimes. See *State v. Carapezza*, 286 Kan. 992, 999, 191 P.3d 256 (2008).

At the pretrial hearing, Johnson stated that Kyles accused Johnson of breaking into his home and demanded that Johnson give Kyles his car keys and what he had in his pockets. Johnson's testimony here provides relevant evidence establishing why Kyles may have confronted and shot Johnson: Kyles believed Johnson broke into his home. At trial, however, Johnson did not state that Kyles accused him of breaking into his home at the barber shop. Rather, Johnson stated that he did not know why Kyles demanded his car keys and that there was no animosity between him and Kyles before that day. While Johnson's testimony at trial is weak as to establishing Kyles' motive in confronting and shooting Johnson, we cannot conclude that no reasonable person would have agreed with

10

the district court's decision to admit this evidence because the confrontation at the barber shop does provide some evidence that Kyles may have had something against Johnson and therefore provides limited evidence of motive.

The district court also held that the barber shop confrontation was relevant to proving identity based upon its similar nature to the June 2013 shooting. Kyles recognizes on appeal that identity was in dispute, and Kyles specifically argued during closing argument that the State could not prove he was the shooter. Kyles' argument on this point before us focuses more generally on the prejudicial effect of the barber shop confrontation evidence.

Our Supreme Court has explained:

"'Where a similar offense is offered for the purpose of proving identity, the evidence should disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that the defendant committed both of the offenses. . . . There should be some evidence of the underlying facts showing the manner in which the other offense was committed so as to raise a reasonable inference that the same person committed both offenses.'" *State v. Garcia*, 285 Kan. 1, 15, 169 P.3d 1069 (2007) (quoting *State v. Bly*, 215 Kan. 168, 177, 523 P.2d 397 [1974]).

Johnson stated that in each incident he recognized Kyles' face and Kyles approached him with his hand in his pocket in a way that caused Johnson to believe he had a gun. Johnson's testimony establishes that the barber shop and the convenience store incidents—while similar and relevant enough to establish identity—differed factually and occurred on different dates. Thus, the evidence was unlikely to confuse or distract the jury from the central issues at trial:  what occurred at the convenience store on June 2, 2013, and who committed the offenses. More significantly, Johnson was the only witness who identified Kyles, thus his ability to identify Kyles was highly probative and key to establishing who shot him. Evidence that Johnson saw Kyles weeks before the shooting

11

was probative and material to Johnson's ability to identify Kyles as the shooter. The district court therefore did not err in concluding the barber shop incident was similar and relevant to establishing identity.

Finally, we turn to the limiting instruction given in this case because as we've noted above, a limiting instruction is required before evidence under K.S.A. 60-455 may be admitted. See *Longstaff*, 296 Kan. at 892. The district court gave the following limiting instruction:

> "Evidence has been admitted alleging that the defendant committed a crime other than the present crime charged. It may be considered solely as evidence of the defendant's motive and/or intent."

This instruction appears to mirror Pattern Instruction Kansas (PIK) Crim. 4th 51.030 (2017 Supp.) except that while it properly lists motive as a material fact for which the evidence may be considered, it fails to include the hotly contested fact of identity, suggesting error by the district court. See *State v. Blaurock*, 41 Kan. App. 2d 178, 201, 201 P.3d 728 (2009) (error for district court's limiting instruction to fail to include identity). But standing in our way of consideration of this issue is the fact that Kyles does not challenge the instruction as erroneous. "When a party fails to brief an issue, that issue is deemed waived or abandoned." *State v. Gonzalez*, 307 Kan. 575, 592, 412 P.3d 968 (2018).

The longstanding rule was that a district court erred by admitting K.S.A. 60-455 evidence under one exception merely because it would have been admissible under another not instructed upon. See *State v. McCorgary*, 224 Kan. 677, 686, 585 P.2d 1024 (1978). Our Supreme Court abrogated this rule in *State v. Reid*, 286 Kan. 494, Syl. ¶ 7, 186 P.3d 713 (2008), where it held that a trial court's decision to admit evidence under K.S.A. 60-455 would not be reversed if it was right for the wrong reason.

12

Even if this issue were properly before us, as we've already held, the district court properly admitted the bad act evidence concerning the barber shop confrontation as it was relevant to proving motive and identity. While the district court should have included identity in its limiting instruction as a purpose for which the jury could consider the evidence, its failure to do so was harmless error. See *State v. Dern*, No. 106,406, 2013 WL 2395253, at *8 (Kan. App. 2013) (harmless error for district court to admit K.S.A. 60-455 evidence under one exception when admissible as propensity evidence instead), *aff'd in part, rev'd in part*, 303 Kan. 384, 362 P.3d 566 (2015). The district court properly weighed the probative and prejudicial value of the evidence before admitting it and gave a limiting instruction. The district court did not err in admitting the prior bad act evidence under K.S.A. 2017 Supp. 60-455.

III.    DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING KYLES' MOTION FOR A NEW TRIAL?

Next, Kyles asserts that the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence.

We review a district court's order denying a motion for a new trial based on newly discovered evidence for an abuse of discretion. *State v. Warren*, 302 Kan. 601, 614, 356 P.3d 396 (2015). "'Judicial discretion can be abused in three ways:  (1) if no reasonable person would have taken the view adopted by the trial court; (2) if the judicial action is based on an error of law; or (3) if the judicial action is based on an error of fact.' [Citation omitted.]" *Marshall*, 303 Kan. at 445. The party asserting error "'bears the burden of demonstrating an abuse of discretion.' [Citation omitted.]" *State v. Ashley*, 306 Kan. 642, 650, 396 P.3d 92 (2017).

To determine whether to grant a motion for a new trial based on newly discovered evidence, a district court must consider "(1) whether the defendant has met the burden of

13

establishing that the newly proffered evidence could not, with reasonable diligence, have been produced at trial and (2) whether the evidence is of such materiality that it would be likely to produce a different result upon retrial." *State v. Rojas-Marceleno*, 295 Kan. 525, 540, 285 P.3d 361 (2012).

The district court denied Kyles' motion for a new trial upon finding that he failed to establish that the evidence was newly discovered. The district court held that Kyles did not exercise reasonable diligence in locating the witnesses before trial and that his claim that he could not learn the alibi witnesses' names or location until after trial was not credible.

Kyles acknowledges our Supreme Court's decision in *State v. Backus*, 295 Kan. 1003, 287 P.3d 894 (2012), but he argues that his case is distinguishable. In *Backus*, the defendant moved for a new trial based on newly discovered evidence that his father remembered after trial that Backus was with him and not at the Dollar General on the night of the murder. Our Supreme Court held the district court did not err in denying his motion for a new trial because the evidence was only material to prove alibi, Backus would have had personal knowledge that he was with his father before trial, and he failed to exercise reasonable diligence in disclosing his father as an alibi witness. 295 Kan. at 1011-12.

Here, Kyles proffered that Wilson and Borsella would testify he was with each witness at his home on the date and time of the shooting. Like *Backus*, the materiality of the evidence relates to proving Kyles had an alibi, but unlike *Backus*, Kyles was unrelated to either witness. Kyles argues that he could not locate either witness before trial because he only knew their street names and that his incarceration before trial made it impossible for either witness to locate or contact him.

14

Kyles' argument is unpersuasive. The shooting occurred in June 2013, but it wasn't until March 2015 that Kyles entered the Wyandotte County jail. In addition, while Kyles filed a notice of alibi in February 2016, identifying two different alibi witnesses, the district court didn't conduct the trial until November 2016. Finally, at trial, Kyles called no witness to testify on his behalf.

Kyles has failed to show he exercised reasonable diligence in locating Wilson and Borsella before trial. Kyles would have had personal knowledge of the two people he was with at his home when the shooting occurred on June 2, 2013. Although Kyles may have known only the witnesses' street names, Kyles did not assert or proffer that he made any attempt or that his attorneys made any attempt to investigate the witnesses' identities or to locate the witnesses before trial. Rather, Kyles merely asserts that the investigation would have been a difficult task. Because a reasonable person could agree with the district court's conclusion that Kyles failed to exercise reasonable diligence in trying to locate either witness before trial, we find the district court did not abuse its discretion in denying Kyles' motion for a new trial.

IV.    DID THE DISTRICT COURT'S DEADLY WEAPON FINDING DURING SENTENCING VIOLATE KYLES' CONSTITUTIONAL RIGHTS?

At sentencing, the district court found that Kyles committed a person felony with a deadly weapon and ordered him to register as a violent offender under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. Kyles asserts for the first time on appeal that the district court's registration order violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because the district court engaged in improper judicial fact-finding which increased his punishment.

"Generally, constitutional claims cannot be raised for the first time on appeal." *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (citing *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 [2015]). A party seeking to raise a constitutional issue not raised below must assert an exception to the general rule. 307 Kan. at 430. Kyles claims we can review the issue because it presents a question of law.

However, Kyles' argument has been specifically rejected by the Kansas Supreme Court's decision in *State v. Huey*, 306 Kan. 1005, 1010, 399 P.3d 211 (2017), *cert. denied* 138 S. Ct. 2673 (2018), a point Kyles concedes. Moreover, Kyles offers no argument that our Supreme Court is departing from *Huey* and only briefly recites some of the arguments used in the dissent in support of the merits of his claim. Given that there is no indication our Supreme Court is departing from its position in *Huey* and we are duty bound to follow our Supreme Court's precedent, we reject Kyles' constitutional claim. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015).

Affirmed.